[Civ. No. 21959.   Second Dist., Div. Two.   Feb. 21, 1957.]

BEN GREENBLATT et al., Appellants, v. STATE BOARD OF EQUALIZATION et al., Respondents.

Wolver & Wolver for Appellants

Edmund G. Brown, Attorney General, James E. Sabine, Assistant Attorney General, Dan Kaufmann and James C. Maupin, Deputy Attorneys General, for Respondent.

FOX, J.—Plaintiffs were engaged, generally, in providing precut lumber and other building materials for "do-it-yourself" builders. Believing they were entitled to a sales tax refund, plaintiffs brought this action. They have appealed from an adverse judgment.

It is plaintiffs' position that they were exempt from the state sales tax because they were either contractors or a service organization. They also challenge the sufficiency of the evidence to sustain adverse findings on these issues. The State Board of Equalization levied the tax on the theory that plaintiffs primarily were selling materials and that the services rendered their customers were minor and incidental to these sales. Hence they are not basically either a service organization or building contractors.

There is no issue as to the method by which the tax was computed nor as to the accuracy of the computation.

The Ralph Kushner Construction Company (hereinafter sometimes referred to as Kushner) is a partnership which was engaged in the business here under review in 1947. The modus operandi was substantially as follows:

Kushner's salesmen sought out people who were interested in building a house or an addition to their home, with a view to selling them precut building materials. Each transaction was evidenced by a document signed by the customer and, on occasion, by a representative of plaintiffs. This document was headed "MATERIAL CONTRACT ONLY." The customer was referred to as "Purchaser" and Kushner as "Seller." There were also printed on the face of the instrument these words: "AGREEMENT FOR MATERIALS LISTED BY SELLER." Just below this line, on the left of the page, were the printed words: "Material List." Below these words were thirteen blank lines,[1] following which was a space for the total price of the materials listed.

Under the transaction with Kushner, the purchaser received certain prefabricated materials which, with the help of a set of do-it-yourself plans supplied by Kushner, would enable

---

[1] In the space on Exhibit "A," after listing the materials to be furnished, is the following in handwriting: "Material contract only No Labor Nothing else"

a customer with some skill in carpentry to erect the contemplated structure. The lumber was precut by Kushner and put together much on the order of a jigsaw puzzle. The plans which Kushner furnished its customers were prepared by one Eagle. They were denominated "key plans" suitable for use by a layman, and showed where each piece of lumber sold by Kushner was to be placed. No provision for furnishing either plumbing or electricity was included in the transaction.

Kushner assisted the customers in securing financing with a bank on FHA terms, in securing building permits, and in obtaining final approval by building authorities. There was evidence that Kushner had an oral agreement with the lending institution to the effect that it would see that the structures financed by the bank would ultimately be completed.

Kushner did not purchase materials by the job but in bulk. Kushner maintained a yard in Wilmington to precut the lumber in accordance with the plans. After the lumber was cut to size it was delivered to the jobs. If a customer did not understand the plans, or did not know how to do the work, plaintiff furnished a man to explain the instructions and show him how he should proceed. These employees of plaintiff assisted a customer where necessary and upon occasion did particular items of the work for the customer. This type of assistance varied from minor matters to more important ones. Mr. Spencer, whose job it was to oversee construction and offer advice when a customer requested it, estimated on direct examination that 75 per cent of the customers required some assistance. However, on cross-examination, Spencer appeared to modify this percentage by stating: "I do know it is about ten" per cent.

After about the middle of July no new transactions were entered into. So far as the preexisting transactions were concerned, there is testimony that Kushner was obliged, pursuant to its oral arrangement with the bank, to assist in completing 65 per cent of its customers' unfinished projects.

There was also testimony that plaintiffs replaced, without cost, material stolen from the job site or destroyed during construction.

The owner either did the plumbing and electrical work or hired a licensed contractor to do it. Where a customer was unable to do such work, Kushner would assist the customer to get additional financing in order to enable him to hire a contractor. Plaintiffs' men were sometimes called on for assistance in plastering.

Kushner's total income for 1947 from these operations was $1,045,706.25. Yard wages for the period were $44,580.57. Total material purchases were $630,094.86.

The trial court found: "All services performed or offered to be performed by the plaintiffs or any of them in connection with the sales reflected in the measure of tax imposed by defendant State Board of Equalization were incidental and subsidiary to the sale of building materials, and did not constitute the plaintiffs or any of them as building contractors, repairers of property, or a service organization."

In passing on plaintiffs' contention that this finding is lacking in evidentiary support, the following principles must be observed: "When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact. [Citations.] When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. [Citations.]" (*Primm* v. *Primm*, 46 Cal.2d 690, 693-694 [299 P.2d 231].) Thus we must "view the evidence in the light most favorable to the respondent" (*Estate of Isenberg*, 63 Cal. App.2d 214, 216 [146 P.2d 424]), and bear in mind that it is the function of the trial court to pass on the credibility of the witnesses and determine the weight to which their testimony is entitled.

■ Applying these principles, it is clear there is ample evidence to support the challenged finding. The record reveals (1) that plaintiffs sold precut lumber and building materials to customers, together with plans and instructions for a "do-it-yourself" building operation; (2) that for every 14 dollars of plaintiffs' costs for materials only one dollar was spent for labor; (3) that the instruments executed by plaintiffs and their customers, which were prepared by plaintiffs, were in form and content for materials only and without any obligation, or even suggestion, that plaintiffs were to build the contemplated structures; (4) that in only a portion of the transactions, the percentage of which was never satisfactorily established, was assistance given to purchasers, the extent of such assistance being left in a state of nebulous uncertainty. These facts provide substantial evidentiary support for the questioned finding.

While plaintiffs gave testimony indicating they rendered

their customers substantial assistance, much of it was so vague and uncertain as to be lacking in probative value. The record discloses that plaintiffs' principal witnesses failed to enlighten the court with respect to the details of plaintiffs' operations and testified in generalities amounting almost to equivocation. This is illustrated by the remarks of the trial court near the conclusion of the trial when he observed: "This is the funniest million-dollar business I ever heard of. Here are two partners and there isn't any partner that knows anything about what went on in the business." Also, in evaluating the credibility of the plaintiffs and in passing on the weight of their testimony, the court was entitled to take into consideration their interests in the outcome of the case. It certainly cannot be said on this record that the trial court was required to find that plaintiffs were in fact operating as building contractors or conducting a service operation.

The trial court's finding that all services performed or offered by plaintiffs were "incidental and subsidiary to the sale of building materials" is a reasonable inference from the evidence, and adequately disposes of plaintiffs' argument that they were operating a service organization and hence were exempt on that ground from the state sales tax.

In support of their contention that they are exempt from sales tax as a service enterprise, plaintiffs refer to Sales and Use Tax Ruling Number 1 then in effect (18 Cal. Admin. Code, § 1901), promulgated by the State Board of Equalization, which provided: "Persons engaged in the business of rendering service are consumers, not retailers, of the tangible personal property which they use *incidentally* in rendering the service. Tax, accordingly, applies to the sale of the property to them. If in addition to rendering service they regularly sell tangible personal property to consumers, they are retailers with respect to such sales and they must obtain permits, file returns and remit tax measured by such sales . . ." (Italics added.)

The difficulty with plaintiffs' position is that they did not establish themselves as consumers of tangible personal property incidental to a service operation. The evidence and findings demonstrate that plaintiffs did not use the precut lumber and buildings materials "incidentally" in rendering a service. Rather, plaintiffs' service was merely "incidental" to the sale of its products, precut lumber and building materials, and the trial court reasonably so found.

In support of their contention that plaintiffs were con-

tractors, they rely on Sales and Use Tax Ruling 11 (18 Cal. Admin. Code, § 1921), promulgated by the State Board of Equalization. So far as pertinent here, that ruling, during the time with which we are concerned, provided:

"(1) The term 'contractor' as used herein includes both general contractors and subcontractors and includes contractors engaged in such building trades as carpentry, bricklaying, cement work, steel work, plastering, sheet metal work, roofing, tile and terrazzo work, electrical work, plumbing, heating, air conditioning, painting and interior decorating.

"(2) The term 'construction contract' as used herein means a contract for erecting, remodeling, or repairing a building or other structures on land and includes lump-sum, cost-plus, and time-and-material contracts. The term 'construction contract' does not include a contract for the sale and installation of machinery or equipment.

"(3) The term 'materials' as used herein means tangible personal property which when combined with other tangible personal property loses its identity to become an integral and inseparable part of the completed structure.

.    .    .    .    .    .    .    .    .    .    .    .    .

"(b)Materials Used by Contractors: (1) Contractors are the consumers of materials used by them in fulfilling construction contracts and the tax applies to the sale of such materials to the contractors . . ."

If plaintiffs were contractors and thus consumers of the building material here in question they would not be subject to the state sales tax.

Examination of Ruling Number 11 discloses that plaintiffs are not within the protection of that ruling as "the consumers of materials" because they did not use the materials "in fulfilling construction contracts" with their customers. (See last paragraph of ruling, *supra.*) Plaintiffs had no such contracts with their customers.[2]  The documents in evidence are headed "MATERIAL CONTRACT ONLY." The customer is designated as "Purchaser" and plaintiffs as "Seller." The document is described as an "AGREEMENT FOR MATERIALS LISTED BY SELLER." In the fine print near the bottom of the page appear other statements referring to the parties as purchaser and seller. The document is conspicuous by the absence of any agreement on the part of Kushner to perform

---

[2]There is testimony that independent of plaintiffs' dealings in precut lumber and other building supplies they built "about 12 houses" during the period here under consideration.

any construction work. The record discloses they were primarily selling precut lumber and other building materials. The fact that their testimony revealed they rendered to inexperienced customers certain services and assistance and occasional technical advice with respect to the proper utilization of materials sold does not put them in the primary calling of building contractors. For, as found by the court on substantial evidence, such services were merely "incidental and subsidiary to the sale of building materials."

Plaintiffs argue that their oral agreement with the bank that they would assume responsibility for the completion of unfinished buildings effected a modification of their contracts with their customers. It is obvious that such agreements with a third party were collateral to any agreement with the customer, and did not directly modify such agreements. The trial court could reasonably conclude that the arrangement with the bank made Kushner a guarantor that the buildings would be completed, rather than a contractor that was itself obligated to complete the buildings. Furthermore, the fact that upon occasion Kushner, in order to make good on its obligation to the bank, arranged to have certain structures completed, did not transform its primary function from a vendor of precut lumber and other building materials with do-it-yourself kits for its customers' use into building contractors.

Plaintiffs further contend that Exhibits "A" and "B" were not properly admissible into evidence. Both exhibits were properly in evidence, no objection having been made to their admission. Plaintiffs assert that the McMonigle document (Exhibit "B") was offered for a limited purpose. The record discloses no such limitation. To confine admitted evidence to something less than its natural scope there must be agreement by the court. "In the absence of an express understanding between counsel and the court that evidence is limited to a particular matter, the court will be authorized to consider it for any purpose for which it is competent and relevant to the issues." (*Sears* v. *Starbird*, 78 Cal. 225, 230 [20 P. 547]; *Sill* v. *Reese*, 47 Cal. 294, 340.) Plaintiffs also contend that Exhibits "A" and "B" were merely informal documents not indicative of the complete agreement with its customers and that the entire agreement could be shown by parol testimony. The record reflects that the trial court fully explored the extrinsic circumstances relative to plaintiffs' trans-

actions before reaching its conclusion that they were primarily sellers of material.

*Levine* v. *State Board of Equalization,* 142 Cal.App.2d 760 [299 P.2d 738], is of no assistance to Kushner since the appellant therein was a contractor building tanks under *bona fides* construction contracts. At page 768 the court recognizes the principle here applicable when it stated: ''Where the appellants had no construction contract but were merely selling their materials to purchasers out-of-state, they were reselling personal property.''

The judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied March 18, 1957.