[Civ. No. 24290. Second Dist., Div. Two. Jan. 25, 1960.]

DORA B. WICKTOR, Respondent, v. COUNTY OF LOS ANGELES et al., Appellants.

Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Deputy County Counsel, for Appellants.

S. V. O. Prichard for Respondent.

ASHBURN, J.—County of Los Angeles and the members of the Retirement Board of Los Angeles County Employees Retirement System appeal from a judgment in favor of Dora B. Wicktor rendered after a second trial of her action to enforce her right to an elective pension as the widow of Dr. Carl Edward Wicktor and as designated beneficiary of the death benefit growing out of the husband's long service with the county.

The pertinent statutes (parts of County Employees Retirement Law of 1937) are Government Code, sections 31780 and 31765.1. At the time of Dr. Wicktor's death on October 27,

1953, the former section read: "Upon the death before retirement of a member while in county service or while physically or mentally incapacitated for the performance of his duty . . . the retirement system is liable for a death benefit which shall be paid to his estate or to such person as he nominates by written designation duly executed and filed with the board." The latter: "Upon the death of any member of a retirement system established in a county subject to the provisions of Section 31676.1 eligible for retirement pursuant to Article 7.5 or 8, who leaves a spouse designated as beneficiary, such surviving spouse may, in lieu of the death benefit provided for in Article 12, elect to receive a retirement allowance equal to 60 percent of the amount to which she or he would be entitled had the member retired on the date of his death with a retirement allowance not modified in accordance with one of the optional settlements specified in Article 11."

Mrs. Wicktor elected to accept a 60 per cent pension during the remainder of her life rather than to receive a lump sum death benefit. That single sum would be $11,773.78, and the monthly pension $204.67.

At the time of the husband's death there was on file in the office of the Los Angeles County Employees Retirement Association a written designation of Mrs. Orrin Shoop, Dr. Wicktor's sister, as beneficiary of his death benefit, and there was no record of any change of beneficiary. The board refused to recognize Mrs. Wicktor's claim that she had been designated as beneficiary and she brought this suit to establish her rights as such. The lower court rendered judgment in her favor, which judgment was reversed in *Wicktor* v. *County of Los Angeles,* 141 Cal.App.2d 592 [297 P.2d 115]. The Supreme Court denied a hearing.

Counsel agree that the court's statement of facts then before it was substantially correct. It is: "The controversy arose from the fact that no record was found of Dr. Wicktor's having designated his wife as his beneficiary. On the contrary, a card was found in the treasurer's office whereby the doctor had designated Mrs. Orrin Shoop as his beneficiary. Respondent was thus, at the threshold of her action, handicapped by the absence of a designation of herself as the beneficiary and by the recorded desire of the doctor that his sister, Mrs. Shoop, receive the benefits of his long service to the county. . . .

"Respondent testified that after her marriage, she had a

conversation with her husband in 1931; he told her of his county retirement and that it was his intention to change the beneficiary; now that he was married, he desired his wife to be the beneficiary of his retirement; subsequently, in the same year he told her he had filed with the retirement system a designation of her as his beneficiary and that all arrangements had been completed and she 'was now officially the beneficiary on his retirement setup.' She testified, also, that the doctor had made calculations as to the amount of monthly payments she would receive. Dr. Schofield also testified to having witnessed decedent's calculations as to the pension his widow would receive." (*Wicktor* v. *County of Los Angeles, supra,* 141 Cal.App.2d 592, 595-596.)

The reversal was in general terms, thus throwing all issues open for retrial. Before that trial occurred the Supreme Court decided *Watenpaugh* v. *State Teachers' Retirement System,* 51 Cal.2d 675 [336 P.2d 165], and therein expressly disapproved some of the discussion in the Wicktor opinion, saying: "The cases dealing with ordinary life insurance contracts are therefore not controlling. Language in *Wicktor* v. *County of Los Angeles,* 141 Cal.App.2d 592, 596 et seq. [297 P.2d 115], *Nichols* v. *Board of Retirement,* 121 Cal. App.2d 176, 180 [262 P.2d 862], and *Shaw* v. *Board of Administration,* 109 Cal.App.2d 770, 774 [241 P.2d 635], indicating that the interpretation of the provisions of retirement acts for public employees is to be governed by the same principles as those applicable to ordinary life insurance is disapproved insofar as it conflicts with the views expressed herein." (Pp. 681-682.) The trial court, doubtless influenced strongly by the Watenpaugh decision and certain new evidence introduced at the second trial, found: "That during his lifetime the said Carl Edward Wicktor filed with said Retirement Board a designation in writing, designating the petitioner as the beneficiary of the retirement benefits of said Carl Edward Wicktor and that the Retirement Board has misplaced or lost said designation and refuses to recognize the petitioner as the designated beneficiary of the retirement rights of said Carl Edward Wicktor." The ultimate question upon the instant appeal is the sufficiency of the evidence to sustain this finding.

Counsel for appellants rely heavily upon the doctrine of the law of the case. That is the first question we must determine. That doctrine is defined in *Tally* v. *Ganahl,* 151 Cal. 418, 421 [90 P. 1049], as follows: "The doctrine

of the law of the case is this: That where, upon an appeal, the supreme court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal, and, as here assumed, in any subsequent suit for the same cause of action, and this although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular. . . . It is a necessary corollary of this doctrine that the former ruling is not binding upon the second hearing, except as to questions which involve and are controlled by the same principle. (*Mattingly* v. *Pennie,* 105 Cal. 516 [45 Am.St.Rep. 87, 39 P. 200].)'' The Mattingly case says, at page 517: ''It is settled beyond controversy that a decision of this court on appeal, as to a question of fact, does not become the law of the case.'' ▮ It is firmly established that the doctrine does not apply to a second trial which presents facts substantially different from the first. *Haase* v. *Central Union H. S. Dist.,* 27 Cal.App.2d 319, 322 [80 P.2d 1044], says: ''There is, however, a settled limitation upon the doctrine which must be taken into account. This qualification is that when an adjudication is made upon a certain state of facts there must be substantial identity of facts on a subsequent appeal in order that the doctrine shall be applicable.'' ▮ *Estate of Baird,* 193 Cal. 225, 244 [223 P. 974] : ''At this point we will state the legal test by which it is to be determined whether the change in the evidence is sufficient to avoid the rule of the law of the case.

''The authorities use such expressions as that the new evidence must be 'materially,' 'essentially,' or 'substantially' different before it can be held the doctrine does not apply. [Citations.] The rule is binding as to questions which involve and are controlled by the same principles [citation]. ▮ Additional evidence merely cumulative to evidence of the same class given on the first appeal will not carry a question outside the operation of the rule as to the law of the case, but to successfully escape the rule a new and substantial fact must be brought into the case on the subsequent appeal.'' Supporting this general rule are, *Weightman* v. *Hadley,* 138 Cal.App.2d 831, 841 [292 P.2d 909] ; *Klauber* v. *San Diego Street Car Co.,* 98 Cal. 105, 107-108 [32 P. 876] ; *McLeran* v. *Benton,* 73 Cal. 329, 337 [14 P. 879, 2 Am.St.Rep. 814] ; *Harris* v. *Hensley,* 214 Cal. 420, 422 [6

P.2d 253]; *Henslee* v. *Fox,* 25 Cal.App.2d 286, 291 [77 P.2d 307]; 4 Cal.Jur.2d, § 688, p. 594.

Another important aspect of this doctrine is disclosed by *England* v. *Hospital of Good Samaritan,* 14 Cal.2d 791, 795 [97 P.2d 813]: "The doctrine of the law of the case is recognized as a harsh one (2 Cal.Jur. 947) and the modern view is that it should not be adhered to when the application of it results in a manifestly unjust decision. (*United Dredging Co.* v. *Industrial Acc. Com.,* 208 Cal. 705 [284 P. 922].) However, it is generally followed in this state. But a court is not absolutely precluded by the law of the case from reconsidering questions decided upon a former appeal. Procedure and not jurisdiction is involved. Where there are exceptional circumstances, a court which is looking to a just determination of the rights of the parties to the litigation and not merely to rules of practice, may and should decide the case without regard to what has gone before." A portion of this language is quoted with apparent approval in *Vangel* v. *Vangel,* 45 Cal.2d 804, 809-810 [291 P.2d 25, 55 A.L.R.2d 1385]. See also *Gore* v. *Bingaman,* 20 Cal.2d 118, 123 [124 P.2d 17].

*Hubbard* v. *Jurian,* 47 Cal.App. 543, 545 [190 P. 1052] and *Union Oil Co.* v. *Reconstruction Oil Co.,* 58 Cal.App.2d 30, 36 [135 P.2d 621], are cited to the contrary, but the opinions in those cases were not approved by the Supreme Court, a petition for hearing having been denied without comment in each case (see 4 Cal.Jur.2d, § 529, p. 376). Such a ruling approves the result reached below but not the reasoning of the District Court opinion. The Hubbard and Union Oil cases cannot be accepted as impinging upon the doctrine stated in the Supreme Court cases of *England* v. *Hospital of Good Samaritan, supra,* 14 Cal.2d 791, 795 and *Vangel* v. *Vangel, supra,* 45 Cal.2d 804, 809-810, and similar cases cited *supra.*

It will be apparent as we proceed that the law of the case doctrine is not applicable here because (1) the evidence at the second trial bearing upon the crucial issue of whether there was a written change of beneficiary was substantially different from that received at the former hearing, and (2) the application of the reasoning of the former Wicktor decision to the facts proved at the second trial would result in grave injustice to respondent.

At the time of that former decision it seemed to be the law, as stated in *Nichols* v. *Board of Retirement,* 121 Cal.

App.2d 176, 180 [262 P.2d 862] : "Generally speaking, the provisions of the act providing for death benefits are similar to a contract of life insurance, to be governed by principles applicable to such contracts. (*Shaw* v. *Board of Administration, supra,* and cases there cited.)" *Shaw* v. *Board of Administration,* 109 Cal.App.2d 770, 774 [241 P.2d 635], also says: "The provisions of the Retirement Law providing for a death benefit are in the nature of a contract of life insurance to be governed generally by the principles applicable to such contracts"; the court citing numerous cases which were thought to support the proposition. In the Wicktor decision, *supra,* it is said, at page 596: "The cited authorities are peculiarly pertinent for the reason that the County Employees' Retirement Act of 1937 'providing for death benefits are similar to a contract of life insurance, to be governed by principles applicable to such contracts.' (*Nichols* v. *Board of Retirement,* 121 Cal.App.2d 176, 180 [262 P.2d 862].)" It was this aspect of the opinion which was disapproved by Watenpaugh, *supra.*

██ In the same connection the Supreme Court introduced a new concept into the law of this state concerning the interpretation of retirement or pension statutes, saying at page 681 of the Watenpaugh opinion: "The purpose of the provisions requiring the filing of a change of beneficiary is largely to protect the retirement system against the possibility of being called upon to pay twice. A second purpose, no doubt, is to provide a method of ascertaining the desire and intent of the member with reference to the payment of death benefits. ██ The statute should be construed to give effect to an executed designation when there is a clear manifestation of intent by the member to make the change and the designation is filed promptly after death so as to prevent any prejudice to the retirement system.

"Our interpretation is in accord with the decisions involving War Risk or National Service Life Insurance issued to men in military service, where the purpose of the provisions of the statutes and regulations requiring the filing of a change of beneficiary is also largely to protect the government against being called upon to pay twice. (See 2 A.L.R.2d 489, 491.) It has been held that literal compliance with such regulations is not necessary to obtain a change of beneficiary where it is established that there was an intention to change and there was some affirmative action evidencing the exercise of the right to change. (*Aguilar* v. *United States,* 226 F.2d 414, cert. den.

351 U.S. 955 [76 S.Ct. 852, 100 L.Ed. 1478] ; *Kendig* v. *Kendig,* 170 F.2d 750, 751; *cf. Shack* v. *United States,* 234 F.2d 934, 936.)''

The statute there under consideration was section 14575 of the Education Code, which provided that upon death of a member of the State Teachers' Retirement System before retirement ''there shall be paid to such beneficiary as he has nominated by written designation duly filed with the Retirement Board'' certain specified benefits; also section 14661, which provided for change of beneficiary ''nominated by a written instrument duly executed and filed with the board.'' Watenpaugh, a teacher, had executed a prescribed form for designation of his wife as beneficiary, but instead of filing it had placed it in a folder in his home and it there remained until after his death. It was filed with the System by the widow's attorney. The Supreme Court held that to be a sufficient compliance with the statute. It remarked that ''[t]he sections do not expressly preclude a filing of the designation form after the member's death, and no persuasive arguments are presented why they should be so construed.'' (Pp. 680-681.) The court then defined the purposes of the sections and invoked the analogy of National Service Life Insurance cases, which was essential to a rounded opinion. By that we mean that the change of beneficiary must be the act of the employee, not some other person, and such act could not be completed or effectuated after his death except through the aid of some such humanitarian doctrine as that of the federal decisions summarized in this sentence at page 681 of Watenpaugh, *supra:* ''It has been held that literal compliance with such regulations is not necessary to obtain a change of beneficiary where it is established that there was an intention to change and there was some affirmative action evidencing the exercise of the right to change. (*Aguilar* v. *United States,* 226 F.2d 414, cert. den. 351 U.S. 955 [76 S.Ct. 852, 100 L.Ed. 1478] ; *Kendig* v. *Kendig,* 170 F.2d 750, 751; *cf. Shack* v. *United States,* 234 F.2d 934, 936.)''

These rulings grow out of the view expressed by Mr. Justice Holmes in *White* v. *United States,* 270 U.S. 175, 180 [46 S.Ct. 274, 70 L.Ed. 530], where, speaking of War Risk Insurance, he said: ''The language is very broad and does not need precise discussion when the nature of the plan is remembered. The insurance was a contract, to be sure, for which a premium was paid, but it was not one entered into by the United States for gain. All soldiers were given a right to it, and the rela-

tion of the government to them, if not paternal, was at least avuncular. It was a relation of benevolence established by the government at considerable cost to itself, for the soldier's good.'' Concerning National Service Life Insurance the case of *Collins* v. *United States* (10 C.A.), 161 F.2d 64, 69, says: ''This was government insurance, provided and made available to members of the armed forces by the government. Only members of the armed forces could obtain this insurance. It was made available to them because of the interest the government had in them and those dependent upon them. The government had a paternalistic interest in the members of its armed forces and in the welfare of their families. For these reasons it made this insurance available to them which they could not have obtained otherwise, without any thought of profit; in fact, knowing that it would incur substantial financial loss in writing the insurance. In view of all this, it is unreasonable to conclude that the government intended to encircle the right to change the beneficiary with technicalities and make such a change difficult of accomplishment. It is more reasonable to assume that all the government intended to require was satisfactory evidence of the intent of the insured to change the beneficiary, together with satisfactory evidence showing positive action on his part to effectuate such intent, and that when once this is shown, legal technicalities relating to ministerial acts or perfunctory acts will be brushed aside in order to carry out the expressed will and intent of the insured soldier.'' In like spirit out Supreme Court observed in *Gibson* v. *City of San Diego*, 25 Cal.2d 930, 935 [156 P.2d 737] : ''It is a general and well recognized rule that pension provisions shall be liberally construed in favor of the applicant. . . . Laws protecting the civil rights of public employes who enter the armed forces in time of war or emergency are favored. National, state, and municipal legislative bodies, and the people themselves by direct vote, have been alert to meet the need for special protective and encouraging measures. In a like progressive spirit both federal and state courts 'have kept pace and have evinced a firm intention to take a liberal view' of these enactments 'in order that their protective purposes may be fulfilled without undue imposition of constitutional limitations or hindrance through narrow judicial construction.' ''

In the Aguilar case (226 F.2d 414), cited in Watenpaugh, *supra,* letters saying that the change of beneficiary had been made were held sufficient proof of the fact. At page 416 the

court said: "This concern was expressed to near relatives on the night of his marriage. Under the circumstances it seems quite natural that he would take the first opportunity to insure her [the wife's] protection. He had asked his brother how to go about doing so and soon thereafter reduced to writing a statement that he had done so. No more competent evidence of an affirmative act having been taken could have been produced short of the production of a written instrument containing the change. The production of evidence of this dignity, the courts have said, is not required, if other competent evidence convinces the trier of the facts that such an instrument at one time was executed." This ruling was made with respect to a regulation which is quoted in *Kendig* v. *Kendig* (9 C.A.), 170 F.2d 750, 751, as follows: " 'A change of beneficiary to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans Administration by the insured or his agent, and containing sufficient information to identify the insured. Whenever practicable such notices shall be given on blanks prescribed by the Veterans Administration. Upon receipt by the Veterans Administration, a valid designation or change of beneficiary shall be deemed to be effective as of the date of execution. . . .' ''

The insured in the Kendig instance had filled out a confidential statement and given same to his squadron commander pursuant to existing Army custom; it gave his wife's name as beneficiary. The court said, at page 751: "In cases involving a change of beneficiary under war risk insurance policies the courts have striven to effectuate the manifest intention of the insured provided always he has taken some affirmative action evidencing an exercise of the right to change. There have been differences of opinion only as to the degree or nature of the action necessary to effect the substitution. Strict compliance with the administrative regulation is not exacted.

"Kendig's confidential statement filed with his Aviation squadron is the most important item of proof here. The mother claims it is purely hearsay, or, if competent for any purpose, that it can be considered only as evidence of an unexecuted intent. We disagree. The statement is not hearsay nor is its probative value limited to its bearing on the insured's intent, if indeed it bears more than retrospectively on that subject. It has dignity at least as evidence of a past act—much greater dignity, we think, than has an oral declaration made in the course of a conversation, however serious. . . . Here, as already noted, there was testimony of the insured's having

told his brother that he had sent in a form changing the beneficiary. The confidential statement tends at least to substantiate this declaration. It is not inconceivable that such a form was actually sent but became lost or misplaced in the files of the Administration.''

*Shack* v. *United States* (5 C.A.), 234 F.2d 934, 936, quotes from an earlier decision as follows: '' 'Cases are unanimous that in war-risk insurance cases involving change of beneficiary the courts will brush aside all legal technicalities in order to effectuate the manifest intent of the insured; and that if he manifests an intent to make a change and has done everything reasonably within his power to accomplish his purpose, leaving only ministerial acts to be performed by the insurer, the courts will treat that as done which ought to have been done and give effect to the insured's intent.' ''

We conclude that the Watenpaugh opinion reflects and adopts the philosophy of these cases and that its application to the facts at bar indicates an affirmance of the judgment.

The facts disclosed by the present record and that of the former appeal, which is incorporated herein by reference, are these. Dr. Wicktor was a member of the County Retirement System from June, 1925, until his death on October 27, 1953; he was employed as a veterinarian. When Mrs. Shoop was named as his beneficiary in March, 1928, he was unmarried. He and plaintiff were joined in wedlock on April 18, 1931. Promptly they executed mutual wills in which each left all property to the other. Dr. Wicktor immediately changed the beneficiary of life insurance which he carried in Travelers Insurance Company and named plaintiff as such. At about that same time he told her of his county retirement right, that he had previously designated his sister as beneficiary and intended to make plaintiff, his wife, the beneficiary. Later in the same year he told her he had filed with the Retirement Association a paper designating her as beneficiary and all arrangements had been completed so that she was then officially the beneficiary of his retirement setup. Shortly before his death the doctor told plaintiff he had made a calculation as to what retirement she would receive under section 31765.1, Government Code, since he had designated her as beneficiary of his county retirement. He showed her the calculation which was entirely in his handwriting and was produced at the trial.

Mr. J. R. Anderson, custodian of the retirement records, testified (per stipulation) that retirement records were kept

on individual cards and the Wicktor card designated Mrs. Shoop as beneficiary under date of March 31, 1928; that no change had been made on that card since he began to keep the records in 1936. Also that it was the practice when anyone wished to change the beneficiary on his retirement he would either call at the office or write a letter and the card would then be brought from the file and correction made on its face; that nothing was sent or given back to the employee to show that a change of beneficiary had been made and the employee had nothing in his possession to show who appeared as the beneficiary of his retirement. Again, ''I do not know whether any application was made by Carl E. Wicktor to change the beneficiary at any time before I was placed in charge of keeping these records. It is possible for the office where these records are kept to receive a letter from an employee and to misplace or lose the same before the record card is changed. Since I have been in charge of the records I have tried to see to it that such a thing does not occur.'' After Dr. Wicktor's death the witness wrote to Mrs. Shoop requesting her to sign and return a document he had prepared ''in order that payment of the money due from the Los Angeles County Employees Retirement Fund may be made to the widow of Dr. Carl E. Wicktor.'' This she did on November 10, 1953. It reads: ''I, Mrs. Orrin Shoop, sister of Dr. Carl E. Wicktor, hereby authorize H. L. Byram, County Treasurer of Los Angeles County, to pay to his widow, Mrs. Dora Wicktor, the money due from the Los Angeles County Employees Retirement fund.''

Dr. Ralph Scofield (per stipulation) testified that he was a veterinarian and associate employee of Dr. Wicktor for a number of years; that they had discussed on many occasions ''our county retirement, our respective beneficiaries thereunder and we have made calculations in the presence of one another as to how much our beneficiaries would receive in the event of our demise or retirement. On a number of occasions Dr. Wicktor advised me that he had made Mrs. Dora B. Wicktor his beneficiary and that upon his retirement she would receive a retirement of a certain sum and in the event of his sudden death she would receive under Section 31765.1 of the Government Code 60% of that figure. I do not recall at this time the precise figure which was calculated by Dr. Wicktor but I do definitely recall his statement that he had made Mrs. Wicktor his beneficiary and his statement that she would receive 60% of a precise figure if she made

the election provided for under Section 31765.1 of the Government Code.''

There is no conflicting evidence, all testimony in each trial having been received through stipulation of what the witnesses would testify. The above outline shows the status of the case at the time of denial of hearing by the Supreme Court upon the former appeal. It will be noted that the proof did not show ''affirmative action evidencing the exercise of the right to change'' as distinguished from declarations of Wicktor as to what he intended to do or had done. Up to that point in the litigation it appeared to be all talk.

At the second trial the affidavit of Dr. Leslie M. Hurt was placed in evidence through stipulation. It says that he was county livestock inspector for 38 years and Dr. Wicktor was his first assistant. About the time of Wicktor's marriage affiant received a series of cards relative to designation of beneficiary under the retirement plan and was requested by the board to contact every member in his department and to notify each of them of the importance of having a designation of beneficiary on file with the board. He assigned to Dr. Wicktor the task of seeing that the cards were distributed and all personnel notified. ''Dr. Wicktor stated in substance that he was delighted that the cards had come, because it was very appropriate, and reminded him of the fact that his sister had been named as the beneficiary, and now that he was married he should change his beneficiary, so that his wife would be designated. Dr. Wicktor stated in substance that he would take care of his own matter and have his wife designated as his beneficiary, and that he would distribute the cards throughout the department.'' Later he reported that he had completed the assignment and ''also stated that he had personally taken care of his own matter, and that he had filled out a card and sent it directly to the Retirement office naming his wife as the beneficiary of his retirement monies.'' Before the cards were transmitted to the office of the board Wicktor exhibited all of them to the affiant who saw among them a card prepared and signed by Wicktor which designated his wife as his beneficiary. The cards were then in a basket used for transmission of interoffice mail ''and it was the usual practice that the inter-office mail would be picked up from that basket each day by the postman.'' He and Wicktor, about that same time, discussed the fact that loose cards were not an appropriate method of keeping the record ''as the card could be either lost in the mail or

misplaced'' etc. The concluding sentence of the affidavit is: ''In any event, Dr. Wicktor advised this affiant that he had mailed his card directly to the Retirement office.''

The record made at the first trial abundantly established the existence of an intention of Dr. Wicktor to make his wife the beneficiary of his retirement death benefit. The Hurt affidavit, uncontradicted, establishes the taking of substantial steps to consummate that result. Within the Watenpaugh philosophy it shows that Wicktor made out the card, signed it and himself mailed it to the Retirement Board. That decision, *supra*, requires the acceptance of this proof as sufficient to establish the fact of delivery through the mail and subsequent misplacing, loss or destruction of the document. Hence it becomes unnecessary to prove, as appellants contend, that someone placed it in an envelope, addressed, sealed and stamped the same and deposited it in the post office or one of its mail boxes.

The ascertainment of the desire and intent of the member with reference to payment of death benefits has been shown abundantly. The second purpose of the statute ''to protect the Retirement System against the possibility of being called upon to pay twice'' is subserved by the foregoing holding and the document executed and delivered by Mrs. Shoop authorizing payment to plaintiff of money due from the Retirement Fund. Obviously she must have been acquainted with her brother's desire and intention. If the payments were so made she would be estopped to complain.

The last mentioned facts point to the propriety of here disregarding law of the case. If its application were to result in a reversal that would be a highly inequitable disposition of the matter. The husband wanted plaintiff to have the death benefit, he actively tried to effect that end, the sister avowedly does not want the money and no one but the widow claims it. Appellants do not resist payment of the benefit to a rightful claimant. They have nothing at stake except an apparent desire to establish a precise and convenient administrative procedure for change of beneficiary. The vital difference between the proofs at the first and second trials furnishes the other basis for ignoring law of the case.

Viewing the matter more narrowly, we arrive at the same result,—affirmance. Appellants rely heavily upon the hearsay rule, contending that the statements of Dr. Wicktor fall within that category and cannot bridge the gap between the cards in an outgoing mail basket—open to the

observing eye and hence not yet ready for mailing—and the receipt and subsequent loss or misplacing of same in the board's office. But the Watenpaugh case establishes that Dr. Wicktor's statements made before and after the event are not hearsay but are competent, independent evidence so far as they relate to his intent to change his beneficiary.

 "In the Hansen [*Hansen* v. *Bear Film Co.*, 28 Cal.2d 154 (168 P.2d 946)] and Whitlow [*Whitlow* v. *Durst*, 20 Cal.2d 523 (127 P.2d 530)] cases it is stated broadly that, when intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule. The present case is closely analogous to those involving wills, deeds and other transfers of property, and comes within the rule as above stated." (*Watenpaugh* v. *State Teachers' Retirement System, supra,* 51 Cal.2d 675, 680.)

 We apprehend that this rule does not render these declarations competent for all purposes, such as proof of the truth of the declaration. Being admissible for the limited purpose of showing intent, it was incumbent upon appellants to seek to restrict the use of same for that specific purpose. Failure to do so leaves the declarations in evidence for all purposes. (*County of San Luis Obispo* v. *White,* 91 Cal. 432, 437-438 [24 P. 864, 27 P. 756]; *Rupp* v. *Summerfield,* 161 Cal.App.2d 657, 663 [326 P.2d 912]; *Greenblatt* v. *State Board of Equalization,* 148 Cal.App.2d 619, 625 [307 P.2d 379]; *Williams* v. *Hartford Ins. Co.,* 54 Cal. 442, 449 [35 Am.Rep. 77]; *Estate of Scott,* 128 Cal. 57, 69-70 [60 P. 527]; 18 Cal.Jur.2d, § 125, p. 566.) In this instance counsel stipulated as to what the testimony of each witness would be. The stipulation also says: "It is further stipulated that if any of the above testimony, in the former stipulation, in the said affidavit, or in this stipulation could be objected to as hearsay such objection or objections shall be deemed to have been made." We have no reporter's transcript but the findings and judgment recite that counsel had "stipulated as to the interposition of certain objections" and that the court had "given due and careful consideration to the evidence presented and the objections interposed." We are nowhere told what, if any, rulings the judge actually made. It is to be presumed, however, that he impliedly overruled the hearsay objection, which he should have done. There having been no request for a limitation, there was no occasion for the

judge to declare one. ▉▉▉ "To confine admitted evidence to something less than its natural scope there must be agreement by the court. ▉▉▉ 'In the absence of an express understanding between counsel and the court that evidence is limited to a particular matter, the court will be authorized to consider it for any purpose for which it is competent and relevant to the issues.' " (*Greenblatt* v. *State Board of Equalization, supra,* 148 Cal.App.2d 619, 625.) ▉▉▉ We have no showing of any such agreement by the court in the instant case. Though they be technically hearsay as to the truth of the facts stated, these statements of Dr. Wicktor are in evidence for all purposes and are in the status of hearsay which has been received without objection. Such evidence will support a finding of the truth of the substance of the hearsay statements. (*Lucy* v. *Davis,* 163 Cal. 611, 616 [126 P. 490] ; *Powers* v. *Board of Public Works,* 216 Cal. 546, 552 [15 P.2d 156] ; *Merchants etc. Assn.* v. *Kellogg Express & Dray Co.,* 28 Cal.2d 594, 599 [170 P.2d 923] ; *Dorfer* v. *Delucchi,* 61 Cal.App.2d 63, 66 [141 P.2d 905] ; 19 Cal.Jur.2d, § 389, p. 123.)

Dr. Wicktor's statement to Dr. Hurt "that he had mailed his card directly to the Retirement office" thus becomes proof of the fact, and at this point the presumption of due transmission and delivery by the post office department steps in and completes the chain of proof. (See Code Civ. Proc., § 1963, subd. 24 ; *Reid* v. *Holcomb,* 63 Cal.App. 89, 94 [218 P. 76] ; *Morello* v. *Growers Grape Prod. Assn.,* 82 Cal.App.2d 365, 371 [186 P.2d 463].) After receipt of the instrument the act of filing is but a ministerial one to be performed by an office employee of the board and its omission could not affect the rights of one who has presented the document for filing. In legal contemplation that act of tendering for filing in a public office amounts to actual filing. (*Schomer* v. *R. L. Craig Co.,* 137 Cal.App. 620, 626 [31 P.2d 396].) Nor could subsequent misplacing or loss of the card affect the rights of the beneficiary.

Appellants' counsel argue, from the premise that Dr. Hurt saw the Wicktor card in the outgoing mail basket, that the proof is insufficient to show actual mailing and receipt of same. The argument ignores the testimony that Dr. Wicktor told Dr. Hurt he had mailed the card himself. At best there is presented the familiar conflict of inferences to be drawn from testimony presented by affidavit. ▉▉▉ The rule is the same as if the testimony had been produced by a witness upon

the stand. Conflicts are to be resolved by the trial judge and an appellate court is bound thereby. (*Murray* v. *Superior Court,* 44 Cal.2d 611, 619 [284 P.2d 1].)

The judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.