[Civ. No. 8350. Fourth Dist., Div. Two. Feb. 16, 1968.]

RAYMOND J. RYAN et al., Plaintiffs and Appellants, v. MIKE-RON CORPORATION, INC. et al., Defendants and Respondents.

Dillon, Moore, Boyd & Robinson, Thompson & Colegate and F. Gillar Boyd, Jr., for Plaintiffs and Respondents.

C. A. Broderick for Defendants and Respondents.

THOMPSON (Raymond), J. pro tem.†—This action was before the court on a prior occasion, *Ryan* v. *Mike-Ron Corp.,* 226 Cal.App.2d 71 [37 Cal.Rptr. 794]. The opinion therein was filed March 30, 1964, reversing judgment and returning the matter to the trial court for further action. Shortly thereafter (opinion filed May 24, 1964), the Supreme Court in *Keene* v. *Harling,* 61 Cal.2d 318 [38 Cal.Rptr. 513, 392 P.2d 273], had before it a very similar case and established a contrary rule to that enunciated in *Ryan* v. *Mike-Ron, supra.* When this present matter again came before the trial court, a pretrial hearing determined the decision in *Ryan* v. *Mike-Ron Corp., supra,* to be the ''law of the case.'' Later, trial judgment was entered awarding plaintiffs $5,000 based on the formula set forth in *Ryan* v. *Mike-Ron, supra.*

The sole question to be decided is whether the ''law of the case'' doctrine is applicable to the former opinion of this court. Plaintiffs contend the present situation should be regarded as an exception to that doctrine, arguing it should not preclude the court from reaching subsequent contrary decision when the law has been clarified in the interval between two appeals and it is apparent the ends of justice so require.

Excerpts from the former opinion summarize the case for present purposes: ''This is an action to recover a deficiency on a conditional sales contract and to foreclose a chattel mortgage. On September 22, 1959, Raymond J. Ryan and Helen Ryan, plaintiffs and respondents (hereinafter referred to as plaintiffs) agreed to sell and Mike-Ron Corp., Inc., defendant and appellant (hereinafter referred to as Mike-Ron), agreed to buy 23 items of personal property for a price of $100,000. A promissory note in the amount of the contract price was executed by Mike-Ron and guaranteed by defendant and appellant Stanley A. Tanner (hereinafter referred to as Tanner). Both defendants, Mike-Ron and Tanner, executed a

---

†Assigned by the Chairman of the Judicial Council.

mortgage of chattels covering four other items of personal property not included in the sale, as additional security for the payment of the purchase price.

"Though required to make $5,000 monthly payments, the defendants made none. Fifteen months elapsed, and plaintiffs then repossessed those items which defendants had taken into their possession. All 23 items were eventually sold for a total of $10,860. Evidence was offered, but rejected, to the effect that the top fair market value of the goods at the time the contract was made was $25,000. The trial court entered a deficiency judgment (which took into account attorney's fees, costs of sale, and the deduction of fair market value of a Dodge Power Wagon) in the amount of $91,347.90 less the net proceeds of the foreclosure sale which the trial court ordered of the four items subject to the chattel mortgage.

"All of the parties to the action agreed and the trial court found that the Dodge Power Wagon, which was one of the 23 items conditionally sold, is a motor vehicle within the purview of the Civil Code section 2982, and since the contract did not conform to the provisions of that section, the contract is unenforceable as to the Dodge Wagon. The trial court found that the reasonable value of the Dodge Power Wagon was $500, severed this item from the contract, and enforced the contract as to the balance. Defendants contend that the conditional sales contract is entire, indivisible and if partially invalid, is wholly unenforceable. We agree with this contention.

"The consideration for the sale of the 23 items was a promise to pay $100,000. There was no allocation of the sales price to any of the items sold. 'If payment of a lump sum is to be made for several articles, the contract is necessarily indivisible.'

"Since the contract was entire it must stand or fall as a unit.

"In order to completely dispose of the issues presented by this appeal which may arise upon a retrial, it is necessary to determine, in light of our holding, whether plaintiffs are entitled to quasi contractual relief. Unquestionably, Mike-Ron's use or right to possess and use, the equipment in question for at least 15 months constituted a substantial benefit conferred upon it by the plaintiffs.

"· · · · · · · · · · · · ·

"We believe that the Legislature did not intend to deprive the seller, guilty only of formal violation of Civil Code section

2982, of restitution where a substantial part of the goods sold were not motor vehicles.

" . . . . . . . . . . . . . .

" 'The seller whose violations are formal only can have an offset ''in an amount representing the depreciation in value of the car occasioned by the use made of it by the buyer while in his possession, which necessarily excludes any allowance for depreciation resulting from a general decline in the market value of such automobile during the period in question''
. . . .' ''

In *Keene* v. *Harling, supra,* 61 Cal.2d 318, plaintiffs were holders of a promissory note given for the purchase of a business employing coin-operated machines. The defense was that the sales agreement was illegal. The total price was $50,000 for the business and machines. Included in the sale were several bingo-type machines, illegal under Penal Code, section 330b. The trial court found the market value of illegal machines to be $4,600, which, if deducted from $32,500 still owing, left a balance of $27,900. Judgment for the balance was entered in favor of plaintiffs. Thus the trial court concluded the contract was severable. Significant quotes from the *Keene, supra,* decision, showing disagreement with the decision in *Ryan* v. *Mike-Ron Corp., supra,* 226 Cal.App.2d 71, are as follows: ''Thus, the rule relating to severability of partially illegal contracts is that a contract is severable if the court can, consistent with the intent of the parties, reasonably relate the illegal consideration on one side to some specified or determinable portion of the consideration on the other side. This rule has been frequently applied in this state.

" . . . . . . . . . . . . . .

"Of course, if the court is unable to distinguish between the lawful part of the agreement and the unlawful part, the illegality taints the entire contract, and the entire transaction is illegal and unenforceable.

" . . . . . . . . . . . . . .

"The trial court additionally found 'That the promise of defendant Fred Harling in said Conditional Sales Agreement to pay the purchase price of $50,000.00, and perform the other terms therein, was not induced by the sale of the bingo-type machines thereunder and said machines were not an integral part of the consideration received by defendant Fred Harling.'[*] Of course, an appellate court must interpret the

---

*In the case at bench the trial court, on the first trial, made a finding as follows: ''The Dodge Power Wagon bearing license tab 2503839 as described in said Conditional Sales Contract is a motor vehicle under the

trial court's findings to support the judgment, if possible. This finding indicates that the buyer did not enter into the transaction because of the illegal machines and that the illegal machines were of such minor importance that they did not 'taint' the otherwise legal consideration. This finding is also supported by substantial evidence. Defendant Blum testified that the legal personal property was worth in excess of $17,000. Included in the legal personal property were an automobile, a truck, office furniture and equipment, repair shop equipment, approximately 46 coin-operated phonographs, about the same number of cigarette dispensing machines, numerous legal pinball machines, eight or more coin-operated scales and several candy and popcorn dispensing machines. Blum also testified that the goodwill of the business was valuable because Keene had such well-established relationships with the various owners of the premises on the route that it would be impossible to compete with him at those locations.

"Since the consideration of the buyer's side was money, the court properly construed the contract by equating the established market price of the illegal machines to a portion of the money consideration. 'The rule is well settled that where several things are to be done under a contract, if the money consideration to be paid is apportioned to each of the items to be performed, the covenants are ordinarily regarded as severable and independent.' (*Pacific Wharf etc. Co.* v. *Standard American Dredging Co., supra*, 184 Cal. 21, 25 [192 P. 847].) The argument that the court cannot apportion because the parties did not expressly apportion is without merit.[2] That argument exalts form over substance."

["[2]Language in *Ryan* v. *Mike-Ron Corp.*, 226 Cal.App.2d 71 [37 Cal. Rptr. 794], appears to be inconsistent with what is contained herein. Insofar as it is inconsistent that language is disapproved."]

In *Keene, supra,* categorical rules were stated which if applied under the evidence and pleadings before the trial court in the case at bench probably would have led to a contrary result. The *Keene, supra,* opinion went on to point out the subject contract contained internal evidence that the parties distinguished between legal and illegal considerations. But somewhat stronger evidence supporting severability in

provisions of Sections 2981 and 2982 of the California Civil Code, and its value is the sum of $500.00." The trial court also made the following conclusion of law: "The Dodge Power Wagon described in said Conditional Sales Contract is a motor vehicle under the provisions of Sections 2981 and 2982 of the Civil Code and is severable from the balance of the contract and its value is the sum of $500.00."

*Keene, supra,* does not distinguish it from the case at bench with respect to the basic legal principles declared.

Defendants contend footnote number 2 in *Keene, supra,* constitutes an express disapproval of the former opinion in this case. It is difficult to determine exactly what language is disapproved. But the doctrine of *Keene, supra,* is clearly inconsistent with the law formulated in *Ryan* v. *Mike-Ron, supra,* so it is unnecessary to precisely determine the intent of the footnote.

In our case the taint of illegality is far less, and the ease of severing illegal from legal is greater than in *Keene, supra.* Here only the $500 Dodge Power Wagon, $\frac{1}{2}$ percent of the total $100,000 sales price, is illegal, whereas in *Keene, supra,* illegal machines represented $4,600 of a $50,000 total consideration, or 9.2 percent. Further, the taint in *Keene, supra,* was illegal gambling machines, arguably an inherent evil, whereas the taint in the present transaction was purely technical—*malum prohibitum.*

It is common knowledge that second-hand four-wheel drive pickup trucks are readily available. It cannot be realistically presumed that the parties would have refused to deal without the pickup being included.

Earlier decisions in California state the doctrine of ''law of the case'' categorically without recognizing any exceptions. However, the rule has considerably relaxed in recent years.

Recently, *People* ex rel. *Dept. Pub. Wks.* v. *Lagiss,* 223 Cal.App.2d 23 [35 Cal.Rptr. 554], involved the question whether ''law of the case'' should apply where, in the interval between two appeals in the same case, the Supreme Court announced a rule clearly in conflict with the earlier appellate opinion. At page 34 we find the following, applicable to the case at bench: ''As stated by Witkin: 'The doctrine of ''law of the case'' deals with the effect of the *first appellate decision* on the subsequent *retrial or appeal*: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' (3 Witkin, Cal. Procedure, § 210, p. 2419; citing *Tally* v. *Ganahl,* 151 Cal. 418, 421 [90 P. 1049], and other cases.) It appears from the late California decisions that this doctrine is one of policy only and that it will be disregarded when compelling circumstances call for a redetermination of the determination of the point of law on a prior appeal. (*England* v. *Hospital of*

*Good Samaritan,* 14 Cal.2d 791, 795 [97 P.2d 813]; *Vangel* v. *Vangel,* 45 Cal.2d 804, 810 [291 P.2d 25, 55 A.L.R.2d 1385]; *Wicktor* v. *County of Los Angeles,* 177 Cal.App.2d 390, 396 [2 Cal.Rptr. 352]; see 3 Witkin, Cal. Procedure, § 211, pp. 2421-2422.) This is particularly true where an intervening or contemporaneous change in the law has occurred by the overruling of former decisions or the establishment of new precedent by controlling authority. (*Standard Oil Co.* v. *Johnson,* 56 Cal.App.2d 411, 415-416 [132 P.2d 910]; *England* v. *Hospital of Good Samaritan, supra,* p. 795; *Gore* v. *Bingaman,* 20 Cal.2d 118, 122-123 [124 P.2d 17]; *Subsequent Injuries Fund* v. *Industrial Acc. Com.,* 53 Cal.2d 392, 395 [1 Cal.Rptr. 833, 348 P.2d 193]; see *Wicktor* v. *County of Los Angeles, supra,* at pp. 397-404; and see 3 Witkin, Cal. Procedure, § 217, p. 2430.) In the present case the trial court applied the law declared in *People* v. *Lagiss* to the effect that the condemning body's findings of necessity are reviewable in condemnation actions when facts establishing fraud, bad faith or abuse of discretion are affirmatively pleaded, although *Chevalier* [52 Cal.2d 299 (340 P.2d 598)] had intervened as a precedent declaring that such finding was not justiciable even though fraud, bad faith or abuse of discretion may be alleged in connection with the condemning body's determination of such necessity. The clarification of the principles stated in *Chevalier* on the issue of public necessity made after our decision in *People* v. *Lagiss,* impels us to depart from the doctrine of 'the law of the case' because adherence thereto would amount to the use of the doctrine, as an instrument of injustice upon plaintiff. Accordingly, we do not hesitate to reconsider our prior determination in the light of the controlling rule stated in the *Chevalier* case.''

In *England* v. *Hospital of Good Samaritan,* 14 Cal.2d 791 [97 P.2d 813], during the interval between two appeals, the California Supreme Court had abolished the rule of law exempting charitable hospitals from liability for negligence. The plaintiff had suffered severe injuries, was free of fault, and there was no doubt of the hospital's negligence. Emphasizing the injustice that would result from ''law of the case'' doctrine, an exception was held proper and the rule enunciated by later decision of the Supreme Court was followed.

In *Wicktor* v. *County of Los Angeles,* 177 Cal.App.2d 390 [2 Cal.Rptr. 352], the Court of Appeal refused to apply ''law of the case'' where, during the interval between two appeals, the Supreme Court relaxed technical rules in respect to

change of beneficiary under insurance and retirement plans. Under the former technical rules set out in the appellate court's first opinion, a widow would have been deprived of benefits contrary to the intentions of the deceased employee. The later opinion of the Supreme Court was held controlling.

In *People* ex rel. *Dept. Pub. Wks.* v. *Lagiss, supra,* 223 Cal.App.2d 23, a strong showing of injustice, as existed in *England, supra,* and *Wicktor, supra,* was lacking. An intervening decision of the Supreme Court determined the issue of public necessity in a condemnation action to be entirely legislative and not subject to inquiry by the court. Although the *Lagiss* court recognized there was ample evidence to sustain a finding that at least a part of the parcel sought to be condemned was not needed by the condemning agency, still, it held it would be an injustice upon plaintiff to apply ''law of the case'' and followed the intervening law.

In the case at bench both sides argue justice and hardship. The former opinion of this court allowed an equitable recovery. If we do not follow ''law of the case'' and apply the *Keene, supra,* rule instead, the probable result will be a deficiency judgment in plaintiffs' favor, for a sum of $91,347.90 upon a contract wherein the original purchase price was $100,000. The property was all repossessed and sold in accordance with admittedly fair procedures producing its fair market value at the time of the sales. Whether this result is just, or unjust, or harsh cannot be resolved as easily as the question in *England, supra,* and *Wicktor, supra.* There is no intimation of fraud or undue influence in formation of the contract. Presumably all parties were competent and dealt at arm's length.

We feel, consistently with the trend of recent cases, that to deprive plaintiffs of the benefits of their bargain, available to them under the law established in *Keene, supra,* would be unjust. We are, therefore, constrained to rule that we have in the present situation an exception to the ''law of the case'' doctrine and *Keene, supra,* should be followed.

We conceive the law now to be that when, between two intermediate appeals, the California Supreme Court announces a rule contrary to the first opinion of appellate court, that court should subsequently follow the Supreme Court rather than its own former decision, the law of the Supreme Court being *per se* justice. As was said by Judge Learned Hand in *Higgins* v. *California Prune & Apricot Grower, Inc.,* 3 F.2d 896, 898: ''There can surely be in

greater reason for changing our views than because the Supreme Court has directly ruled upon the precise point in the interim."

We may remark it has been indicated in some older decisions that a trial court has little discretion to depart from the law in the first appellate opinion. (See *Estate of Baird,* 193 Cal. 225, 258 [223 P. 974].)

We agree with Witkin, where he states in 3 California Procedure, (1954) § 211, p. 2422:

"However, the trial courts should have authority to disregard the law of the case where a controlling appellate decision has intervened as a precedent. (See 62 Harv. L.Rev. 287, note 3; 5 Stan.L.Rev. 766; *infra,* § 217.)"

Respondents, in their petition for rehearing, assert they relied on the "patent" defense of illegality and intimate that otherwise they would have plead defenses of fraud, undue influence, and possibly other defenses. Upon reversal the parties will, of course, have the opportunity in the trial court to move to amend their pleadings if so minded.

Judgment reversed.

McCabe, P. J., and Kerrigan, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 10, 1968.