[Civ. No. 959.   Fifth Dist.   Aug. 15, 1968.]

EDWARD S. MUKTARIAN, as Executor, etc., Plaintiff and Appellant, v. ROBERT BARMBY, Defendant and Respondent.

Edward S. Muktarian, in pro. per., Carl Kuchman, Anthony M. Kennedy and Timothy F. Kennedy for Plaintiff and Appellant.

Archibald M. Mull, Jr., Lally, Martin, Chidlaw & Viets, J. M. Brown and Thomas W. Martin for Defendant and Respondent.

STONE, J.—This case comes to us after a retrial that followed a reversal by the Supreme Court (*Muktarian* v. *Barmby,* 63 Cal.2d 558 [47 Cal.Rptr. 483, 407 P.2d 659]). In the first trial judgment was entered pursuant to a motion under Code of Civil Procedure section 631.8, at the conclusion of plaintiff's case,[1] upon the ground the action was barred by the statute of limitations. The Supreme Court held that the applicable statute of limitations had not run at the time of the commencement of the action, and reversed the judgment. As the reversal was unqualified and without directions, the case was completely retried.

In the second action, which is now before us, the trial court again found in favor of defendant, but with different findings on critical issues. In the first trial the court found that the attorneys for plaintiff prepared and recorded a deed from plaintiff to defendant, reserving a life estate in plaintiff, "contrary to the intentions in the mind of plaintiff at the time of executing said deed in the offices of Mull & Pierce." Upon retrial, after reversal, a different judge found that:

"William Barmby, on December 15, 1947, freely and voluntarily executed and delivered said grant deed conveying the property subject of this action to defendant, reserving a life estate therein."

Plaintiff's principal argument on this appeal is that the finding of the court in the first trial became the law of the case because the Supreme Court, in reversing, did not specifically overturn the finding there had been no delivery. Plaintiff reasons that since the Supreme Court discussed only the question of applicability of the three-year statute of limitations and reversed on that issue alone, all other findings in the

---

[1] Wm. E. Barmby died pending the first appeal and his executor was substituted as appellant. For convenience, we refer to Wm. E. Barmby as plaintiff.

first trial were left standing to become the law of the case.

This reasoning is based upon a misconception of the term "the law of the case." As we understand the rule, the law stated by an appellate court in a decision, necessary to that decision, becomes the law of the case on a retrial, but the rule does not apply conversely, that is, all findings not mentioned by the opinion are not thereby approved. Since the decision in *Muktarian* v. *Barmby, supra,* is confined to a particular statute of limitations it could have no bearing upon the question of delivery of the deed.

This court considered a similar question in *Daly* v. *Smith,* 220 Cal.App.2d 592 [33 Cal.Rptr. 920]. An appeal had been taken from a judgment in a former trial in which the court of appeal established as the law of the case that there was bad faith on the part of the cross-defendants. In discussing the effect of the prior appellate decision as the rule of the case, we said: "The suit was tried at large at the second trial and all issues were considered and determined. The Fourth District Court of Appeal only decided certain questions of law, and it reversed the case principally because the issue of estoppel was not fully dealt with. The doctrine of the law of the case is applicable, generally speaking, only to principles of law laid down by the court as related to a retrial of the facts, but the doctrine does not embrace the facts themselves." (P. 602.) (See *Tally* v. *Ganahl,* 151 Cal. 418, 421 [90 P. 1049]; 3 Witkin, Cal. Procedure (1954) Appeal, Law of the Case, § 210, p. 2419.)

Similarly, here the Supreme Court reversed on the limited issue of the statute of limitations, so that all other findings on other issues in the first trial have no bearing whatever upon the findings of fact, including those relating to delivery, as found by the judge who retried the case.

Thus the question narrows to whether there is substantial evidence to support the findings on the issue of delivery.

We turn to the record, keeping in mind that our review of the evidence is governed by the classic rule summarized in *Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557], to wit: ". . . it is the general rule that on appeal an appellate court (1) will view the evidence in the light most favorable to the respondent; (2) will not weigh the evidence; (3) will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact; and (4) will not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof.

Ordinarily delivery is a question of fact to be determined by the trial court (*Estate of Pieper*, 224 Cal.App.2d 670, 684 [37 Cal.Rptr. 46]), resting largely upon the intent of the grantor to pass title. Both of these determinative questions of fact must be resolved by the trial court from the circumstances surrounding the transaction. (*Estate of Pieper, supra.*) The Supreme Court observed, in *Osborn* v. *Osborn*, 42 Cal.2d 358, 363-364 [267 P.2d 333], that ''In some cases to ascertain the grantor's intent it is necessary to have recourse to his acts and declarations both before and after his transmission of the deed to the grantee or a third party [citations].''

The background facts reflect that the land involved was part of a large ranch owned by plaintiff and his first wife, Mai. They agreed that the survivor of them should own the ranch and upon his or her death it should go to their two sons, defendant and Ernest. Accordingly, they had their attorney, Mr. Mull, prepare reciprocal wills, which they executed. Each also executed a grant deed in favor of the other and irrevocably deposited the deeds in escrow with Mr. Mull with instructions to record or deliver the applicable one to the survivor upon the death of either. The mother died in August 1946, and her deed was delivered to the father; his deed to her was destroyed. Defendant and Ernest testified that they worked on the ranch, assisting plaintiff, who frequently told them the ranch would be theirs some day.

Following Mai's death in August 1946, plaintiff married Etta on December 2, 1947. Within a few days thereafter defendant heard that Etta was telling people in the area that plaintiff was going to give some of the land to her and her relatives. Defendant and his daughter-in-law went to his father's home on December 14, and in the presence of Etta and his daughter-in-law, defendant asked his father if the reports were true. His father said they were, and asked his son what he was going to do about it. Defendant replied that he was going to do everything he could to protect his ranch. An argument followed and finally plaintiff asked: ''What do you want? Well, what do you want?'' Defendant said, ''Dad, I want it made into a deed so these people can't get it, and I'll have it when you are through with it, but you are to have the life income off it which mother and all of us agreed to.''

On December 15, plaintiff and his sons went to the law offices of Mull & Pierce and saw Mr. Pierce. Defendant testified that he told Mr. Pierce what his father wanted, and Mr.

Pierce asked plaintiff, "Bill, that's what you want?" and plaintiff replied, "Yes." Defendant and Ernest waited in the reception room while plaintiff and Mr. Pierce went into the latter's office. The deeds were drawn and plaintiff apparently furnished the property descriptions. Defendant paid the attorney's fee and the cost of recording the deed.

Attorney Pierce, now Mr. Presiding Justice Pierce of the Court of Appeal, Third Appellate District, said he had little memory of the conversation, although the deeds were prepared and signed in his office and he acted as notary public. He testified:

"We usually record deeds after they are delivered in our office, signed and delivered, and these two were."

There is evidence that plaintiff, on the morning of December 15, told his grandson, defendant's son, that he had to go to town with his two boys to take care of some business, and that evening he told the grandson he had divided the home ranch between the two sons, giving part to Ernest and part to Robert, defendant herein. Plaintiff told Lucille Barmby, defendant's daughter-in-law, what he had done and pointed out to her on a map the parcels transferred to Robert and Ernest.

Ernest Barmby testified that he was present "lots of times" when his father stated that defendant owned a portion of the ranch.

On March 21, 1950, plaintiff executed an option for the sale of gravel with a license to prospect the real property, which was prepared by Mr. Mull and signed in his office. The agreement reflected that defendant owned the property subject to a life estate in plaintiff. On June 11, 1952, plaintiff entered into an oil and gas lease with Union Oil Co., showing that his interest in the property was a life estate and that defendant and his wife owned the remainder.

An insurance agent, Mr. Morse, testified that in 1961 he delivered a renewal insurance policy covering the property to the plaintiff and plaintiff stated, "You know, I have deeded this property to Bob and that I have a life estate interest." Mr. Morse told plaintiff it would be necessary to add a rider to the policy showing his interest to be that of a life tenant. The policy with the attached rider was admitted in evidence as an admission against interest.

We conclude that the evidence summarized above is substantial evidence and sufficient to support the finding of the trial court that plaintiff freely and voluntarily executed and

delivered the deed conveying the property the subject of this action to defendant, reserving a life estate therein.

Plaintiff cites evidence from which a contrary inference can be drawn, but it is not our province to reweigh the evidence; such conflicts were resolved in the trial court and we find substantial evidence supporting the trial court's view of the evidence.

It is significant, also, that plaintiff's testimony in the first trial, which was admitted in evidence at the second trial, was that he and his wife, Mai, had Mr. Mull prepare reciprocal deeds to the ranch in favor of each other, which they executed and irrevocably deposited in escrow with Mr. Mull with instructions to record or deliver the applicable one to the survivor upon the death of either. Mai died and her deed was delivered to plaintiff, and recorded. Plaintiff testified that he wanted to deed parts of his ranch to his two sons under a similar arrangement. Mr. Pierce, rather than Mr. Mull, happened to be the partner plaintiff consulted, and Mr. Pierce accomplished the same result between plaintiff and his two sons, except that the life estate was preserved by recording the deed rather than by the attorney holding the delivered deed pending plaintiff's death. In any event, there is ample evidence that plaintiff intended to retain use of the property during his lifetime and convey the property to his two sons upon his death, in accordance with a long-standing agreement between him and his first wife and his two sons. This is exactly what was accomplished here (*Osborn* v. *Osborn*, 42 Cal.2d at p. 362 [267 P.2d 333]), a result the trial court found to be in accord with plaintiff's intent.

The judgment is affirmed.

Conley, P. J., and Gargano, J., concurred.