[Crim. No. 18252. In Bank. Mar. 31, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
PAUL THOMAS SHUEY et al., Defendants and Respondents.

COUNSEL

Joseph P. Busch, District Attorney, Harry B. Sondheim and Daniel L. Bershin, Deputy District Attorneys, for Plaintiff and Appellant.

Marshall K. Gordon, under appointment by the Supreme Court, for Defendants and Respondents.

## OPINION

**MOSK, J.**—Defendants Paul Shuey (Paul) and Vicki Shuey (Vicki) were charged in a three-count information with possession of marijuana (Health & Saf. Code, § 11530), possession of marijuana for sale (Health & Saf. Code, § 11530.5) and possession of amphetamines (Health & Saf. Code, § 11910).

On December 27, 1971, Officer Fisk of the Los Angeles Police Department and two fellow officers went to defendants' home to investigate suspected narcotics activity. Five days earlier Fisk had been told by an unnamed informant that an individual named Paul had five "lids" of marijuana at the Shuey address. The officer identified himself to Paul, revealed the purpose of his visit, and asked to be allowed to search the premises. Paul refused, and Fisk informed him the police would obtain a search warrant. Paul continued to withhold consent, and Fisk told him that until the warrant was obtained officers would enter the

Shuey apartment and "secure" the premises. Paul offered no physical resistance, and the officers immediately occupied the premises.

The occupation lasted some three hours, a large part of which Paul spent playing chess with his attorney under the gaze of the police. Thereafter another officer arrived with a warrant, a search was conducted, and contraband seized.[1]

Defendants' motion to suppress the evidence on the ground of illegal search and seizure (Pen. Code, § 1538.5) was denied. The trial was continued to allow defendants an opportunity to seek a writ of mandate in the Court of Appeal. They did so, and in *Shuey* v. *Superior Court* (1973) 30 Cal.App.3d 535 [106 Cal.Rptr. 452] *(Shuey I)* the foregoing police conduct was held to be an illegal seizure of the entire contents of the apartment. The writ was granted, but with directions to the trial court to determine the limited question whether the evidence sought to be suppressed was factually the fruit of the illegality. *(Id.* at pp. 544-545.) We denied a hearing.

The matter was returned to the trial court, and the hearing on the motion to suppress was reopened. The People requested permission to propose an additional theory not raised at the original hearing, i.e., whether there was probable cause to arrest and whether a valid arrest had in fact occurred. In its opinion the Court of Appeal had declared, "At the time of the motion to suppress, the People expressly disavowed any claim that there was a right to make an arrest of Paul before the contraband was actually found. The same principle which forbids us to reexamine the validity of the warrant [which defendants had not contested] keeps us from basing our decision on a theory which the People expressly discarded. [Citation.]" *(Id.* at p. 539.) Because of this holding the trial court denied the People's motion and confined the hearing to the question whether "but for" the illegality the contraband would have been destroyed prior to its discovery. The court found this would have been the case, and accordingly granted the motion to suppress and dismissed the information. (Pen. Code, § 1385.)

The People appealed from the dismissal (Pen. Code, § 1238, subd. (a)(7)), and the case was heard by a different division of the Court of

---

[1]The circumstances surrounding Vicki's arrest do not appear in the record. She was not present in the home at the time of the police entry nor at the time of Paul's arrest. Apparently she was joined as a defendant on the theory that as Paul's wife she was at least partly responsible for the presence of the contraband.

Appeal. In *People* v. *Shuey* (1974) 115 Cal.Rptr. 447 *(Shuey II)* that division held that the trial court erroneously interpreted *Shuey I* as foreclosing the People from relying on an arrest theory. The court said, "the statement in the opinion that 'the People expressly disavowed any claim that there was a right to make an arrest of Paul before the contraband was actually found' and the reference to such a claim as 'a theory which the People expressly discarded' . . . *are without support in the record.* The People's imprecise factual and procedural presentation in the trial court and perpetuated upon the application for the writ undoubtedly led the appellate court to assume that the People had abandoned any effort to justify the search on a lawful arrest and the existence of probable cause therefor." (Italics added.) The court then reversed and remanded with directions to the trial court to vacate its order, reopen the hearing, and "consider the issue whether there existed probable cause to arrest the defendants or either of them at the time of the entry into defendants' home . . . ."[2]

We granted a hearing in order to consider two distinct questions: (1) whether the purported redetermination of the waiver issue by the Court of Appeal in *Shuey II* was valid, and (2) if not, whether the search and seizure in question can be justified without recourse to theories based on probable cause to arrest.

I

■ Strictly speaking, the granting of a hearing in *Shuey II* automatically vacated the opinion of the Court of Appeal and deleted it from the official reports. (Cal. Rules of Court, rule 976(d).) Thus we are now presented with an appeal by the People from the dismissal of the information following the suppression of evidence at the second hearing. However, because of the importance of the issue to the judicial process we deem it appropriate to consider the conclusion of the Court of Appeal in *Shuey II* that the finding of waiver in the first appellate decision was erroneous.

From a policy standpoint it is not difficult to envisage the frustrating consequences that could flow from a practice allowing different panels of the Court of Appeal to redetermine issues which were disposed of on a previous appeal in the same case. For example, if the reasoning of *Shuey*

---

[2]In addition, the trial court was directed to consider "the issue of causation as directed by this court in Shuey v. Superior Court." This further evidentiary inquiry would appear to be superfluous, as the court at the second hearing had specifically found on this issue.

*II* were to control, the matter would be remanded for yet a third hearing. The trial court, under its mandate, would then consider the arrest theory. Among the various results which might emerge from such a hearing could be a finding that the occupation of the Shuey apartment constituted a valid arrest, thus rendering moot the original question whether the discovery of the contraband was factually caused by the "illegality." After the denial of their motion to suppress, defendants might again seek pretrial review in another proceeding entitled "Shuey v. Superior Court." This third appellate panel might correctly conclude that the decision in *Shuey II* was erroneous, that *Shuey I* was controlling, and remand yet again for consideration of the issue of causation. The mind boggles at the possibilities which could arise should the People be no more successful at the fourth hearing than they were at the second: *Shuey IV,* followed by *Shuey V?* Theoretically there could be no certain termination of this sequence, and the parties potentially could find themselves in a Catch-22 position of receiving an infinite lesson in aberrations of appellate procedure.

Fortunately, fundamental rules of appellate review are specifically designed to preclude the possibility of this type of multiple litigation of the same issue. Among these is the doctrine known as the "law of the case" or the "law of the former decision." In the early case of *Tally* v. *Ganahl* (1907) 151 Cal. 418, 421 [90 P. 1049], this rule was aptly described. "The doctrine of the law of the case is this: That where, upon an appeal, the supreme court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal, and, as here assumed, in any subsequent suit for the same cause of action, and this although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular."

The principle applies to criminal as well as civil matters (*People* v. *Durbin* (1966) 64 Cal.2d 474, 477 [50 Cal.Rptr. 657, 413 P.2d 433]; *Castiel* v. *Superior Court* (1958) 162 Cal.App.2d 710 [328 P.2d 476]), and to decisions of intermediate appellate courts as well as courts of last resort. "Where a decision upon appeal has been rendered by a District Court of Appeal and the case is returned upon a reversal, and a second appeal comes to this court directly or intermediately, for reasons of policy and convenience, this court generally will not inquire into the merits of said first decision, but will regard it as the law of the case."

(*United Dredging Co.* v. *Industrial Acc. Com.* (1930) 208 Cal. 705, 712 [284 P. 922].) ■ Application of the rule is now subject to the qualifications that "the point of law involved must have been necessary to the prior decision, that the matter must have been actually presented and determined by the court, and that application of the doctrine will not result in an unjust decision." (*Pigeon Point Ranch, Inc.* v. *Perot* (1963) 59 Cal.2d 227, 231 [28 Cal.Rptr. 865, 379 P.2d 321]; see also *People* v. *Medina* (1972) 6 Cal.3d 484, 491, fn. 7 [99 Cal.Rptr. 630, 492 P.2d 686].)

■ The doctrine, as the name implies, is exclusively concerned with issues of law and not fact. (*Wallace* v. *Sisson* (1896) 114 Cal. 42, 43 [45 P. 1000]; *Moore* v. *Trott* (1912) 162 Cal. 268, 273 [122 P. 462]; *Muktarian* v. *Barmby* (1968) 264 Cal.App.2d 966, 968 [70 Cal.Rptr. 903].) Examples abound, and include the legal sufficiency of evidence (*Estate of Baird* (1924) 193 Cal. 225, 234 [223 P. 974]; *Stromer* v. *Browning* (1968) 268 Cal.App.2d 513, 521 [74 Cal.Rptr. 155]), the sufficiency of pleadings (*McCowen* v. *Pew* (1912) 18 Cal.App. 302, 313 [123 P. 191]; *Lubarsky* v. *Richardson* (1933) 218 Cal. 27, 30 [21 P.2d 557]), the nature and effect of a document (*Steelduct Co.* v. *Henger-Seltzer Co.* (1945) 26 Cal.2d 634, 642 [160 P.2d 804]), and appellate jurisdiction itself (*Gore* v. *Bingaman* (1942) 20 Cal.2d 118, 121 [124 P.2d 17]; *Pigeon Point Ranch, Inc.* v. *Perot* (1963) *supra*, 59 Cal.2d 227, 232).

Admittedly it is not always simple to determine whether a given issue is amenable to disposition under law of the case. One commentator has suggested the following approach: "In so far as issues may be categorized broadly, they may be divided here into two groups: those which are variable and those which are stable in nature. Stable issues are naturally more vulnerable to the rule. This point was phrased by one court as follows: 'If the decision relate to a matter of fact, the evidence respecting it may be entirely different on the second trial, and a different question be thus presented on the second appeal. It is only where the evidence is the same, that the decision of the appellate court would be conclusive. But if the decision relate to a matter which cannot be thus presented under a different aspect—as the construction of a contract or a statute—the first decision of the appellate court is conclusive upon the second trial and second appeal . . . .' " (Note, *Law of the Case,* 5 Stan.L.Rev. 751, 759, quoting *Leese* v. *Clark* (1862) 20 Cal. 387, 418.)

There does not appear to be any reported case dealing with the precise issue of whether a determination that the prosecution has waived reliance on a particular theory to justify a seizure is subject to analysis

under law of the case. In resolving that question we must first decide whether the ruling on waiver in *Shuey I* was "factual" or "legal."

This ruling may be fairly analogized to a holding that a given set of pleadings were or were not sufficient to state a cause of action. The language of the complaint would be "stable," and a determination of the sufficiency of the pleadings would, of course, be "legal." ■ Thus, as noted above, it has long been held that sufficiency of pleadings is an issue subject to foreclosure by law of the case. (*Archer* v. *City of Los Angeles* (1941) 19 Cal.2d 19 [119 P.2d 1].)

■ Similarly, the concession of the prosecution here, once spoken and entered on the record, became stable and did not change throughout the progress of this case. There was no dispute as to what words were spoken but only as to their legal effect, i.e., whether it was sufficient to constitute an "express disavowal" of the arrest theory. Once that decision was made, it became the law of the case. A hearing was thereafter denied in this court and the case returned for an evidentiary hearing on a narrow factual question. Accordingly, the Court of Appeal in *Shuey II* was foreclosed by this rule of procedure from redetermining the legal effect of the statements made at the first hearing.[3]

The court in *Shuey II* sought to avoid the effect of law of the case on a theory that since the issue of the presence of probable cause to arrest was "not before" the first appellate court, there could be no decision on it as an issue. We do not find this rationale compelling. While it is true that law of the case "does not extend to points of law which might have been but were not presented and determined on a prior appeal" (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 179 [18 Cal.Rptr. 369, 367

[3]Indeed, for reasons which the district attorney was unable to articulate at oral argument, these "express disavowals" of the arrest theory were reiterated in the present appeal. The People's opening brief describes the case as follows: "In the instant case at the time this matter came on for a hearing . . . the issue presented, to wit: 'whether police, who have probable cause to believe that a residence contains contraband, but have neither a search warrant, *nor probable cause to arrest anyone in the home,* may force entry for the sole purpose of preventing the disposal of the contraband while other officers obtain a warrant,' had never before been decided in an appellate court in the State of California . . . . Accordingly, the deputy district attorney herein urged only that the officers' action was justified based upon probable cause that contraband was in the residence and *declined to urge that there was probable cause to arrest the respondent Paul Shuey.*" (Italics added.) At this point there appears a citation to the relevant portions of the reporter's transcript and a footnote asking the court to take judicial notice of such portions. Despite these repeated concessions, the opinion in *Shuey II* inexplicably declared that the assertions had "no support in the record."

P.2d 865]), it is nonetheless clear that in the present instance the relevant matters were disposed of in the first appeal.

By contrast, a proper example of this exception occurred in *DiGenova.* There the plaintiff's teaching credentials were revoked pursuant to sections of the Education Code which prohibited employment in public schools of persons convicted of certain specified sex offenses. Plaintiff's offense was relatively minor and he petitioned for mandate on the ground that he had been dismissed without notice and hearing. In his original appeal this contention was rejected. (*DiGenova* v. *State Board of Education* (1955) 45 Cal.2d 255 [288 P.2d 862].)

Thereafter an appellate decision determined that the relevant legislation applied prospectively only. (*Fountain* v. *State Board of Education* (1958) 157 Cal.App.2d 463 [320 P.2d 899].) Plaintiff reinstituted his action and the case again came to this court. We concluded that the doctrine of law of the case was inapplicable because the first appeal was concerned only with the procedural due process issue and not with the question of the retroactive application of the statute. Accordingly, the latter issue was "not before" the court on the first appeal, and the plaintiff was free to present it on the second appeal. (*DiGenova,* at p. 179 of 57 Cal.2d.)

In this instance the issue of waiver was clearly presented in *Shuey I* and disposed of in a published opinion. Thus no analogy can be drawn to *DiGenova.* The fact that the issue of the existence of probable cause to arrest was "not before" the first court is irrelevant since the court in *Shuey II* was not concerned with the substance of this issue but only with the ability of the People to raise it.

Nor does our decision in *People* v. *Medina* (1972) *supra,* 6 Cal.3d 484, compel the conclusion that law of the case is inapplicable here. We there concluded that the denial without opinion by the Court of Appeal of a defendant's application for a writ of mandate after an unsuccessful motion to suppress did not preclude the defendant from later raising the same point on direct appeal. We considered two possible ramifications of a denial without opinion: res judicata and law of the case.

The court in *Shuey II,* in purporting to consider law of the case, relied upon our conclusion in *Medina* that res judicata effects would not attach to a denial of an application for a writ even if the denial was by opinion demonstrating adjudication of the merits. (*Medina,* at p. 492 of 6 Cal.3d.)

The *Shuey II* court concluded that although *Medina* involved an appeal by a defendant, the rule there announced is no less applicable to an appeal made by the People; the People have also been given the same right to appeal the decision on the challenged search.

■ We agree that the same rule applies to both prosecution and defendant, and that the action of the court in *Shuey II* is not erroneous by virtue of principles of res judicata. Yet on the same page of *Medina* in which we discussed res judicata there appears the following language: "The foregoing considerations *do not apply to invocation of the doctrine of the law of the case* on an appeal from a judgment of conviction after an appellate court has denied a defendant's application for pretrial writ review under section 1538.5 by a written opinion which decides the merits of a search and seizure contention. [Citation.] The opinion denying the petition for the writ is in effect an opinion on a prior appeal, for the Legislature has chosen to provide for interim appellate review by an extraordinary writ of mandate or prohibition in lieu of appeal. In determining whether the law of the case will control the decision on the subsequent appeal, however, the appellate court should keep in mind that 'the doctrine of the law of the case, which is merely a rule of procedure and does not go to the power of the court, has been recognized as being harsh, and it will not be adhered to where its application will result in an unjust decision.' [Citation.]" (Fn. omitted.) (*Id.* at p. 492 of 6 Cal.3d; see also *People v. Saucedo* (1974) 42 Cal.App.3d 905, 907 [117 Cal.Rptr. 239].)

As a defendant is bound by principles of law of the case, so are the People. The decision in *Shuey I* was by a written and published opinion, and went to the merits of the issue. The issue itself was necessary to the decision. A petition for rehearing was denied in the Court of Appeal, and thereafter a petition for hearing in this court was denied. ■ The court in *Shuey II* was thus bound by the prior decision, and the purported redetermination of the waiver issue was error.

We pause finally to consider whether application of the doctrine in this case would result in an "unjust decision." (*Medina,* at p. 492 of 6 Cal.3d; *DiGenova,* at p. 179 of 57 Cal.2d.) This broad exception has evolved gradually as courts strove to avoid the harsh consequences which may result from a strict application of the rule. (See Note, *Successive Appeals and the Law of the Case,* 62 Harv.L.Rev. 286, 287-288; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 635-636.) For example, at one time it was thought that even an intervening contrary decision of this court

would not affect the binding nature of the first decision upon a subsequent appeal (*Hubbard* v. *Jurian* (1920) 47 Cal.App. 543, 545 [190 P. 1052]); but modern cases reject that view (*Ryan* v. *Mike-Ron Corp.* (1968) 259 Cal.App.2d 91 [66 Cal.Rptr. 224]), and regard the rule as one of procedure only from which departure may be justified in the interests of justice.

Yet if the rule is to be other than an empty formalism more must be shown than that a court on a subsequent appeal disagrees with a prior appellate determination. Otherwise the doctrine would lose all vitality and the holding of *Medina* would be reduced to a vapid academic exercise, since an unsuccessful petitioner for pretrial writ review could always maintain on subsequent appeal that the prior adjudication resulted in an "unjust decision."

■ We do not propose to catalogue or to attempt to conjure up all possible circumstances under which the "unjust decision" exception might validly operate, but judicial order demands there must at least be demonstrated a manifest misapplication of existing principles resulting in substantial injustice before an appellate court is free to disregard the legal determination made in a prior appellate proceeding. No such showing can be made here. On the basis of the record before it the court in *Shuey I* concluded that the arrest issue had not been raised—indeed, had been expressly waived—and hence could not be raised for the first time on appeal. This ruling comports with existing law. (*Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 640 [108 Cal.Rptr. 585, 511 P.2d 33]; *People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186, 198-199 [101 Cal.Rptr. 837, 496 P.2d 1205].)[4]

*Lorenzana* presented virtually identical contentions to those under consideration here. There the police had trespassed upon a private strip

---

[4]The People point to the cases of *People* v. *Hamilton* (1969) 71 Cal.2d 176, 182 [77 Cal.Rptr. 785, 454 P.2d 681], and *Giordenello* v. *United States* (1958) 357 U.S. 480, 487-488 [2 L.Ed.2d 1503, 1510-1511, 78 S.Ct. 1245], as authority for the proposition that the arrest theory should have been available to the People at the second hearing. Both cases maintain that new theories may not be raised for the first time on appeal but that on *retrial* both parties are free to raise whatever theories they wish. Both cases involved the reversal of a conviction, rather than, as here, the issuance of a writ of mandate and the resumption of a hearing. In fact *Giordenello* specifically stated that "it would [not] be sound judicial administration to send the case back to the District Court for a special hearing on the issue of probable cause . . . . The facts on which the Government now relies to uphold the arrest were fully known to it at the time of trial, and there are no special circumstances suggesting such an exceptional course. . . . [Citation.]" (357 U.S. at p. 488 [2 L.Ed.2d at p. 1511].)

of land adjacent to the defendant's home and from that vantage point peered into the home through a two-inch gap between the drawn window shade and the sill. On the basis of evidence obtained by this surveillance the occupant and another person were charged with narcotics violations. We concluded that the warrantless intrusion did not fall within any of the established exceptions to the warrant requirement, there was no express or implied invitation to use the area from which the observations had been made, and accordingly the denial of the motion to suppress was error.

We then considered the People's alternative argument: "The People finally contend that even if we hold that the police surveillance violated constitutional requirements . . . the case should still be remanded to the trial court to enable the People to argue that the contested evidence, instead of constituting the 'fruit' of that illegality, would, in any event, have been discovered. Such a result, however, would negate the purpose for which Penal Code section 1538.5 establishes the pretrial suppression hearing; namely, to avoid the continued relitigation of the question of the admissibility of evidence.

"In this case, petitioners presented a motion to suppress the evidence on the grounds that it was the fruit of an illegal search; the petitioners and the People submitted that question on the basis of testimony taken at the preliminary examination as well as that adduced at the suppression hearing. All parties faced the obligation of presenting all their testimony and arguments relative to the question of the admissibility of the evidence at that time. *If the People had other theories to support their contention that the evidence was not the product of illegal police conduct, the proper place to argue those theories was on the trial level at the suppression hearing.* The People offered no such argument at that hearing and may not do so for the first time on appeal. To allow a reopening of the question on the basis of new legal theories to support or contest the admissibility of the evidence would defeat the purpose of Penal Code section 1538.5 and discourage parties from presenting all arguments relative to the question when the issue of admissibility of evidence is initially raised." (Fn. omitted; italics added.) (*Lorenzana*, at p. 640 of 9 Cal.3d.)

■ The court in *Shuey I* correctly applied the principles of *Lorenzana* to the facts before it. The People were given full opportunity to present any and all theories at the first section 1538.5 hearing, and deliberately declined to assert a right to arrest as justifying the seizure. Thereafter

they were foreclosed from urging this new ground upon which the seizure might be justified.[5]

## II

There remains for consideration the question whether the seizure may be validated without recourse to theories based on probable cause to arrest. Two preliminary points must be mentioned. First, since the arrest issue is not before us we make no ruling on that question, and nothing herein should be taken to indicate that the search would have been valid had the arrest issue been properly raised.[6]

Secondly, we note that just as the court in *Shuey II* was bound by the prior determination of waiver, so also are we foreclosed by the law of the case from reexamining the substantive merits of the search issue in the absence of a showing that failure to do so would result in manifest injustice. "Questions determined by an intermediate appellate court constitute the law of the case after the decision becomes final. In the absence of exceptional circumstances of hardship and injustice the need for attributing finality to considered judicial determinations compels adherence to the previous decision. [Citation.]" (*People* v. *Durbin* (1966) *supra,* 64 Cal.2d 474, 477; see also *United Dredging Co.* v. *Industrial Acc. Com.* (1930) *supra,* 208 Cal. 705, 712.)

Prior to the decision in *Shuey I* there appear to have been only two reported California cases dealing even tangentially with the issue of the ability of the police to "secure" premises prior to obtaining a search warrant. The first of these, *People* v. *Edgar* (1963) 60 Cal.2d 171, 175-176 [32 Cal.Rptr. 41, 383 P.2d 449], did so by way of dictum on facts readily distinguishable from the case at bar. The second, *Barajas* v. *Superior Court* (1970) 10 Cal.App.3d 185, 189 [88 Cal.Rptr. 730], found probable cause to arrest and concluded there was no necessity of reaching the question "whether police, who have probable cause to believe that a residence contains contraband, but have neither a search warrant, nor

---

[5]It is noteworthy that if the interests of justice were deemed to permit the People to introduce the arrest theory at this late date these same interests could be invoked by defendants to request an opportunity to attack the validity of the warrant. However, as the court in *Shuey I* correctly concluded, the same considerations which foreclose defendants from this tactic foreclose the People also.

[6]The trial court at the second hearing apparently believed that even if the People were permitted to raise and prove the arrest theory, the evidence would nevertheless have to be suppressed: "I don't see that would change the legal situation on the case because you make the arrest at the door rather than going in."

probable cause to arrest anyone in the home, may force entry for the sole purpose of preventing the disposal of the contraband while other officers obtain a warrant."[7]

In *Edgar,* the defendant, while undergoing pretrial confinement, was overheard to tell his mother to dispose of certain photographs at their home. The police went to the defendant's home and acquired the photographs by threatening the mother with a spurious claim of a right to arrest if she continued to refuse to hand them over. This court held the illegal coercion to be an unreasonable search under the Fourth Amendment. The People contended, however, that it was necessary to act without a warrant because of an emergency, i.e., that the mother would dispose of the pictures if the police took the time to acquire a warrant. In response to this contention the court suggested that the officers "could have kept his mother under surveillance, and forewarned of what Edgar wished her to do, they were confronted with no substantial risk that she would succeed in putting the pictures beyond their reach before a warrant could be obtained." (*Edgar,* at pp. 175-176 of 60 Cal.2d.)

The court in *Shuey I* correctly distinguished *Edgar* as follows: "In *Edgar* the impetus for the emergency created by the threatened loss of the pictures was Edgar's instruction to his mother. . . . In the case at bar the impetus for the anticipated disposal of the contraband was the fact that the police, after doing nothing for five days, chose to alert Paul when they had no search warrant, instead of dropping by a magistrate's chambers on their way to his home. The record contains no evidence of even a hunch that Paul was more likely to dispose of whatever contraband he had at 11 a.m. on December 27, than he had been at any hour since December 22. The emergency was strictly of the 'do-it-yourself' variety." (Fn. omitted.) (30 Cal.App.3d at pp. 540-541.)[8]

---

[7]Subsequent to *Shuey I* there have been three Court of Appeal cases of the *Barajas* variety. *(People* v. *Superior Court (Irwin)* (1973) 33 Cal.App.3d 475, 479-480 [109 Cal.Rptr. 106] (finding valid arrest had in fact occurred); *Ferdin* v. *Superior Court* (1974) 36 Cal.App.3d 774, 781-782 [112 Cal.Rptr. 66] (finding both probable cause to arrest and exigent circumstances); *People* v. *Freeny* (1974) 37 Cal.App.3d 20, 32-33 [112 Cal.Rptr. 33] (finding probable cause to arrest and exigent circumstances).) All are of course distinguishable from the case before us.

[8]The People cite two cases from sister jurisdictions as supportive of their position. Both are inapposite. In *Mayorga* v. *People* (1972) 178 Colo. 106 [496 P.2d 304], the police arrived at the defendant's premises armed with a valid warrant but one in which the numerals designating the street address were incorrect. The officers were told to "hold everything" and the error was corrected and the search thereafter conducted. Here of course there was no warrant at the time of the occupation, and the alerting of defendant to the impending search cannot be related to the type of excusable circumstances present

Having established the primary illegality the *Shuey I* court then inquired whether the evidence sought to be suppressed was factually its "fruit." As noted above, it was found that this issue had not been fully tried in the lower court and the case was remanded for that finding.

While this case is now controlled by *Shuey I,* we doubt that the court was required to order an evidentiary hearing. Analytically this case can be regarded simply as involving a de facto, inchoate seizure of the person and property of Paul the moment the police began the illegal occupation. Thereafter the obtaining of the warrant could no more operate "to disinfect this conduct" (30 Cal.App.3d at p. 540) than if the police had actually seized the individual items sought to be suppressed prior to acquisition of the warrant.[9]

Nor was an independent hearing necessary to determine the likelihood that Paul would have disposed of the contraband prior to the return of the police; that would appear so obvious as to be capable of resolution by the Court of Appeal from the record. We are further convinced, however, that in the present context the entire question whether there was a causal nexus between the illegality and the seizure is superfluous because the "securing" of the premises was itself the seizure and as such occurred contemporaneously with the illegality.

As the seizure in this case was unlawful the trial court was correct in suppressing the evidence and dismissing the information. The order appealed from is affirmed.

Wright, C. J., Tobriner, J., Sullivan, J., and Richardson, J., concurred.

**CLARK, J.**—While concurring in the judgment, I dissent from part II of the opinion. The majority appropriately notes that "just as the court in *Shuey II* was bound by the prior determination of waiver, so also are we foreclosed by the law of the case from reexamining the substantive merits of the search issue in the absence of a showing that failure to do so

---

in *Mayorga.* In *Jenkins* v. *State* (1971) 46 Ala.App. 719 [248 So.2d 758], the court refused to justify a search on the basis of exigent circumstances and suggested that one of the officers "could have been left at the house while another went for a search warrant." (*Id.* at p. 759.) *Jenkins* is thus similar to *Edgar* in this regard. In addition the Alabama court made no suggestion that the officers go *into* the premises, but only that they remain *at* the premises.

[9]*Krauss* v. *Superior Court* (1971) 5 Cal.3d 418 [96 Cal.Rptr. 455, 487 P.2d 1023], relied on by the People, is not apposite, since it involved no sustained seizure of the contents of the subject motel room prior to the police officer obtaining a warrant.

would result in manifest injustice." (*Ante,* p. 848.) The requisite showing of injustice has not been made here. Nevertheless, the majority reaches the search issue, gratuitously lending this court's authority to the contention that police may not "secure" premises prior to obtaining a search warrant. The question being foreclosed by the law of the case, I express no opinion concerning it.

McComb, J., concurred.