Filed 12/29/20 P. v. Gonzales CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ROBERT GONZALES, <br><br> Defendant and Appellant. | B301485 <br><br> (Los Angeles County Super. Ct. No. PA042487) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David W. Stuart, Judge. Affirmed.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Charles J. Sarosy, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Robert Gonzales challenges the denial of his petition for resentencing under Penal Code section 1170.95[1] after briefing and a hearing at which he was represented by counsel. He contends the trial court erred by relying on the appellate opinion from his direct appeal. He further contends the record before the trial court contained insufficient evidence to sustain its findings that appellant was a direct aider and abettor who acted with intent to kill or that he was a major participant who acted with reckless indifference to human life. We affirm. The trial court appropriately relied on our prior opinion, which expressly held there was sufficient evidence to support appellant's murder conviction as an aider and abettor.

## FACTUAL BACKGROUND[2]

On September 29, 2002, appellant attended a party in the backyard of a house in Pacoima. Joe Gonzalez (Gonzalez), Victor Zapata, and brothers Jamul Thomas and Teevaughn Thomas were also in attendance.[3]

Around midnight, Zapata and Jamul went to the side yard, where two groups of men were arguing. Appellant was there, and

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

[2]Our factual narrative is drawn from our opinion in the prior appeal in this matter, *People v. Gonzales* (Feb. 27, 2007, B188161) [nonpub. opn.]. We note that appellant relied on the same opinion in his opening brief, although he stated that he did so "without conceding that it is necessarily complete" or "agree[ing] that the following facts are the only facts that might have been relevant to whether he is entitled to relief under section 1170.95."

[3]We refer to the Thomas brothers by their first names to avoid confusion.

2

Zapata saw him pull out a shotgun and cock it.  Zapata and Jamul ran from the party, but returned to find Teevaughn.

Zapata and Jamul waited for Teevaughn in the street in front of the house.  While they were waiting, an SUV pulled up. Zapata and Jamul talked with the occupants of the SUV.  Zapata then heard arguing behind him.  He turned and saw Jamul arguing with Gonzalez; the men were cursing at each other. Zapata saw appellant standing 10 to 12 feet behind Gonzalez at an angle, with his shotgun out.  After he saw appellant, Zapata pulled Jamul toward the middle of the street.

As Zapata pulled Jamul away, Gonzalez drew a handgun and repeatedly pointed it at Jamul's head. Jamul batted the gun away several times and told Gonzalez to put the gun down and fight like a man.  Gonzalez asked Jamul if he was afraid to die and demanded the chain Jamul wore around his neck.  Jamul removed the chain and held it out. Gonzalez grabbed the chain. He then shot Jamul in the chest.

Zapata reached toward Jamul, and Gonzalez pointed the gun at him and demanded his chain as well.  As Zapata was taking off his chain, Gonzalez shot at him and missed. Appellant remained in the same general area throughout the entirety of the incident, angled behind Gonzalez, with his shotgun out.

When Zapata realized he had not been hit, he ran down the sidewalk.  Gonzalez fired at him several more times.  A group of men standing behind appellant yelled "Astoria, Astoria" as Zapata ran away.[4]  Zapata also heard bullets flying past his head as he ran. Teevaughn, who was running behind him, shouted

---

[4]A gang expert testified that Astoria Gardens Locos was a gang, and that appellant had tattoos demonstrating allegiance with the Astoria Gardens Locos.

3

that he too had been hit. Both Zapata and Teevaughn made it to the car. Jamul died of a single gunshot wound.

Police recovered three .22 caliber casings and one shotgun shell from the area of the shooting. The shotgun shell had been fired from a shotgun later recovered from appellant's apartment.

## PROCEDURAL HISTORY

### I.      Trial

Appellant and Gonzalez were jointly charged with murder in the commission of a robbery (§§ 187, subd. (a), 190.2, subd. (a)(17)) and attempted murder with premeditation and deliberation (§§ 664, 187, subd. (a)). The information also included firearm (§ 12022.53, subds. (b)-(e)) and gang (§ 186.22, subd. (b)(1)) allegations, and a felon in possession charge against appellant (former § 12021, subd. (a)(1)).

Appellant and Gonzalez were tried jointly. The jury found Gonzalez guilty of second degree murder and attempted murder, but rejected the gang and firearm allegations. The jury found appellant guilty of the felon in possession charge. It was unable to reach a verdict on the murder and attempted murder charges and related allegations.

The prosecution subsequently filed an amended information against appellant, adding an additional count of robbery (§ 211) to the counts and allegations mistried during the first trial. A second jury found appellant guilty of first degree murder with a robbery special circumstance, attempted murder, and robbery. It also found true the firearm and gang enhancements. The trial court sentenced appellant to life without the possibility of parole for the special circumstances murder conviction, plus 25 years to life for the firearm enhancement on that count. Appellant also received a life term

4

for the attempted murder.  The court imposed concurrent sentences for the robbery and felon in possession convictions, and stayed the gang enhancement.

## II.    Direct Appeal

On direct appeal, appellant challenged his convictions on numerous grounds.  Most relevant here, he argued the murder conviction should be reversed because there was insufficient evidence to support liability under an aiding and abetting theory.  We summarized the relevant procedural history and argument as follows:  "The prosecution case rested on aiding and abetting and felony-murder theories.  The jury was instructed on general aiding and abetting principles, but a proposed instruction on the natural and probable consequences doctrine was withdrawn by the prosecutor, and the instruction was not given. Thus, appellant argues, the jury had to find that appellant shared Gonzalez's intent to commit murder or robbery, which is necessary for aiding and abetting liability.  He claims such evidence is lacking."

We rejected appellant's argument.  After reiterating the facts summarized above, we added:  "Throughout this altercation, Zapata glanced over at appellant many times.  He felt appellant 'was almost as much of a threat as the person with the gun [Gonzalez].'  Zapata yelled 'stop' many times, but did not physically try to intervene.  He felt 'it was bad enough that [Jamul] was in the middle of an argument with a guy with a gun at his head. I didn't want to bring any more physicality, to stir up the incident any more.'  He felt that 'if a second party outside of [Jamul] and the shooter was involved, that would bring in more people from their group to be involved.  And they had guns.  We didn't.'  Zapata was referring specifically to appellant, who was

5

holding the shotgun." We then concluded: "Evidence that appellant stood watch with his shotgun while Gonzalez repeatedly pointed a gun at Jamul's head and demanded Jamul's chain supports the finding that appellant intended to facilitate the robbery and murder by precluding anyone from attempting to physically intervene on Jamul's behalf. There is sufficient evidence to support appellant's conviction as an aider and abettor of murder and robbery." We affirmed both the robbery and murder convictions.[5]

Appellant petitioned the Supreme Court for review of his case. (S151594). The petition was denied.

## III. Section 1170.95 Petition

On March 11, 2019, appellant filed a petition for resentencing under section 1170.95. On the form petition, he checked a box asserting that he was convicted of first or second degree murder under the felony murder rule or natural and probable consequences doctrine. Appellant also checked boxes stating that he could not now be convicted of first degree felony murder because he was not the actual killer; he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree"; he "was not a major participant in the felony **or** [he] did not act with reckless indifference to human life during the course of the felony"; and the murder victim was not a peace officer. Appellant checked the box requesting appointment of counsel.

---

[5]We reversed appellant's attempted murder conviction on other grounds.

6

On May 10, 2019, the prosecution filed an opposition to the petition.[6] It argued that the petition should be denied because appellant was a major participant who acted with reckless indifference to human life. The prosecution attached our prior appellate opinion to the opposition, and pointed out that we had also held there was sufficient evidence to support appellant's conviction on an aiding and abetting theory.

The court appointed counsel for appellant and continued the matter for hearing on July 25, 2019. It is unclear from the record whether the July 25, 2019 hearing occurred.

On August 27, 2019, appellant filed a reply to the prosecution's opposition. Appellant relied on the facts recited in our appellate opinion without qualification. He contended that, "[o]n this record, there is insufficient evidence that [he] was a 'major participant' who harbored the required 'reckless indifference to human life' required for the imposition of a special circumstance LWOP sentence" under the recent Supreme Court cases *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 532 (*Clark*).

The prosecution filed a response, arguing that appellant was ineligible for relief as a matter of law due to our previous holding that sufficient evidence supported his conviction under a direct aiding and abetting theory. It further argued that appellant was a major participant who acted with reckless indifference to human life.

---

[6]The prosecution actually filed two oppositions: one arguing that section 1170.95 and its enabling legislation were unconstitutional, and another opposing appellant's petition on substantive grounds. Only the latter opposition is relevant here; the trial court did not reach the constitutional issue.

7

The court held a hearing on the petition on September 26, 2019. At the hearing, appellant's counsel argued that the court could not rely on the jury's findings that appellant was a major participant who acted with reckless indifference in light of *Banks* and *Clark*. The prosecutor responded that the jury also found, and we affirmed, that appellant was a direct aider and abettor, such that "there's no theory upon which the court would [*sic*] grant defense motion." Appellant's counsel declined the court's invitation to respond to that argument.

The court concluded that appellant was not eligible for resentencing under section 1170.95. The court stated, "Evidence is clearly overwhelming that he was a direct aider and abetter [*sic*] and that he was a major participant with reckless indifference. He stood guard with a shotgun, and while the robbery and murder took place right in front of him, backing up the actual shooter. It's just - - it's not really even a close call. So this is not appropriate for resentencing under SB[ ] 1437

Appellant timely appealed.

## DISCUSSION

### I.    Governing Law

In 2018, the Legislature enacted Senate Bill No. 1437 (SB 1437), the primary purpose of which is to align a person's culpability for murder with his or her own actions and subjective mens rea. (See Stats. 2018, ch. 1015, § 1, subd. (g).) To effectuate that purpose, SB 1437 amended sections 188 and 189. As amended, section 188, subdivision (a)(3) now provides that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189 now provides that a participant in qualifying

8

felonies during which a death occurs generally will not be liable for murder unless (1) he or she was "the actual killer," (2) he or she, "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree," or (3) he or she "was a major participant in the underlying felony [who] acted with reckless indifference to human life." (§ 189, subds. (e)(1)-(3).) The effect of these changes was to restrict the application of the felony murder rule and the natural and probable consequences doctrine as applied to murder. (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248.) "Felony murder and aiding and abetting a murder remain crimes, but to be convicted of murder it isn't enough to participate in a felony that results in a death. Now, a person so accused must have killed the victim, aided the person who did kill the victim with the intent to kill them, or acted as a major participant in the felony with reckless indifference to human life." (*People v. Johns* (2020) 50 Cal.App.5th 46, 54.)

SB 1437 also added section 1170.95 to the Penal Code. Section 1170.95 permits a person convicted of murder on a charging document that allowed the prosecution to argue felony murder or the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and resentence on any remaining counts if the person could not be convicted of murder under sections 188 and 189 as amended by SB 1437. (§ 1170.95, subd. (a).) A petition for relief under section 1170.95 must include: "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court

9

case number and year of the petitioner's conviction.  [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1).)  If any of this information is missing "and cannot be readily ascertained by the court," the court may deny the petition without prejudice.  (§ 1170.95, subd. (b)(2).)

If the petition contains the required information, section 1170.95, subdivision (c) provides that "[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served.  These deadlines shall be extended for good cause.  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."  (§ 1170.95, subd. (c).)

Soon after section 1170.95 took effect, considerable debate arose as to how trial courts should operate in accordance with section 1170.95, subdivision (c).  We follow the approach taken in *People v. Verdugo* (2020) 44 Cal.App.5th 320, review granted March 18, 2020, S260493 (*Verdugo*), and *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137-1140, review granted March 18, 2020, S260598 (*Lewis*).  (See Cal. Rules of Court, rule 8.1115(e)(1).) These cases, along with *People v. Torres* (2020) 46 Cal.App.5th 1168, 1177, review granted June 24, 2020, S262011, hold that subdivision (c) prescribes "a two-step process" for the court to determine if it should issue an order to show cause.  (*Verdugo*, *supra*, 44 Cal.App.5th at p. 327.)  First, the court must "review the petition and determine if the petitioner has made a prima

10

facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) If the petitioner has made this initial prima facie showing, he or she is entitled to appointed counsel, if requested. (*Ibid.*; *Verdugo*, *supra*, at p. 328; see also *Lewis*, *supra*, at p. 1140.) The prosecutor must file a response, and the petitioner may file a reply. (§ 1170.95, subd. (c).) The court then reviews the petition a second time. If, in light of the parties' briefing, it concludes the petitioner has made a prima facie showing that he or she is entitled to relief, it must issue an order to show cause. (*Ibid.*; *Verdugo*, *supra*, at p. 328; *Lewis*, *supra*, at p. 1140.)

In determining whether the petitioner has made a prima facie showing that he or she is entitled to relief under section 1170.95, subdivision (c), "[t]he trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing. . . . [I]f the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.' [Citation.] However, this authority to make determinations without conducting an evidentiary hearing ... is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*)).

Whether a petitioner has made the requisite prima facie showing is a predominantly legal question. We thus review the trial court's ruling de novo. (See *Drayton*, *supra*, 47 Cal.App.5th at p. 981; see also *Smiley v. Citibank, N.A.* (1995) 11 Cal.4th 138, 146 ["Independent review is called for when the underlying determination involves a purely legal question or a predominantly legal mixed question."].)

## II. Analysis

Appellant contends the trial court "short-circuited the statutory procedure" set forth in section 1170.95 "by relying on this court's opinion on direct appeal." He first argues this was error because "the court went beyond the allegations in the petition and sought out information that might contradict appellant's assertion that he could not now be convicted of first or second degree murder under sections 188 and 189."

This argument is not persuasive. "A court of appeal opinion, whether or not published, is part of the appellant's record of conviction." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 333.) As a general rule, the trial court may consider the entire record of conviction, including the appellate opinion, when ruling on a petition for resentencing. (*People v. Cruz* (2017) 15 Cal.App.5th 1105, 1110.) Indeed, analogous petitioning procedures for resentencing under sections 1170.18 and 1170.126 contemplate a gatekeeping function in which trial courts review the record of a petitioner's conviction to determine if the allegations set forth by the petitioner are untrue as a matter of law. (See *People v. Washington* (2018) 23 Cal.App.5th 948, 955 [§ 1170.18]; *People v. Oehmigen* (2014) 232 Cal.App.4th 1, 6-7 [§ 1170.126].) Petitions brought under section 1170.95 are no exception.

The statutory language of section 1170.95 expressly contemplates consideration of the record of conviction at the first stage of prima facie review, in which the court must determine whether a petitioner "falls within the provisions of this section" based on "all the requirements of subdivision (a)." (§ 1170.95, subds. (b)(1), (c).) "If any of the information required" in the petition is missing, the trial court may deny the petition unless the missing information can be "readily ascertained by the court." (§ 1170.95, subd. (b)(2).) To "readily ascertain[ ]" missing information, the court must be permitted to consider documents outside the petition, including the record of conviction; otherwise, the statutory language would be rendered meaningless. (See *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 249.)[7]

Appellant next argues the trial court erred "by engaging in an analysis of the evidence as outlined in the Court of Appeal opinion and making credibility determinations without any analysis of the underlying trial record."

When considering any part of the record of conviction, including a prior appellate opinion, during the first stage of its prima facie review, the trial court must limit its review to determining whether the petitioner is ineligible for relief as a matter of law. (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 328-330; *Drayton*, *supra*, 47 Cal.App.5th at p. 980.) A trial court may "look to a court ruling, including an appellate opinion, for the

---

[7]The statute also contemplates use of the record of conviction at the evidentiary hearing conducted after the trial court has issued an order to show cause. Subdivision (d)(3) states that both the "prosecutor and the petitioner may rely on the record of conviction . . . to meet their respective burdens." (§ 1170.95, subd. (d)(3).)

13

nonhearsay purpose of determining the basis of the conviction." (*People v. Woodell* (1998) 17 Cal.4th 448, 459; see also *People v. Trujillo* (2006) 40 Cal.4th 165, 180 ["an appellate court decision . . . can be relied upon to determine the nature of a prior conviction because it may disclose the facts upon which the conviction was based"].)  It may not make factual findings involving the weighing of evidence or the exercise of discretion, "such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime."  (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.)

Here, the trial court recited the evidence as recounted in our appellate opinion and found it "clearly overwhelming that [appellant] was a direct aider and abetter [*sic*] and that he was a major participant with reckless indifference."  Even if we were to assume this was an improper use of our prior opinion, we find no error in the trial court's ultimate ruling.

A petitioner under section 1170.95 must make a prima facie showing that he or she "*could not* be convicted of first or second degree murder because of changes to Section 188 or 189" made pursuant to S.B. 1437.  (§ 1170.95, subd. (a)(3), emphasis added.)  Here, our prior opinion recounts, and appellant does not dispute, that the case against him "rested on aiding and abetting and felony-murder theories."  S.B. 1437 amended the felony murder rule, but it did not "alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator.'  [Citations.]  One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law."  (*People v. Offley* (2020) 48 Cal.App.5th 588, 595-596.)

14

Appellant acknowledged on direct appeal that "the jury had to find that appellant shared Gonzalez's intent to commit murder or robbery, which is necessary for aiding and abetting liability." He argued then that the record did not contain substantial evidence to support such findings. We disagreed, and held, as a matter of law, that the evidence was sufficient to support a finding that he aided and abetted the murder and the robbery. Appellant therefore cannot demonstrate that he could not be convicted as a direct aider and abettor of the murder, despite his assertions that "the facts of the case simply do not support any conduct demonstrating encouragement, assistance or facilitation of the act of murder as opposed to robbery." We already found that he could be convicted of murder under an aiding and abetting theory, and we do not disturb that finding here. (See *Lewis*, *supra*, 43 Cal.App.5th at pp. 1138-1139; *People v. Garcia* (2020) 57Cal.App.5th 100, 108 .)

Appellant contends that the record of conviction established only that he was an aider and abettor of the robbery, because "no express finding was made regarding intent to kill." He asserts that we "conflated aiding and abetting of the robbery and the murder and reached a general conclusion that there was 'sufficient evidence to support appellant's conviction as an aider and abettor of murder and robbery.'" We disagree. We explicitly found that the evidence "supports the finding that appellant intended to facilitate the robbery *and the murder* by precluding anyone from attempting to intervene on Jamul's behalf."

Appellant finally argues that the law of the case doctrine does not control here. The law of the case doctrine precludes multiple appellate review of the same issue in a single case where "the point of law involved was necessary to the prior decision and

was "'actually presented and determined by the court.'" [Citation.]" (*People v. Gray* (2005) 37 Cal.4th 168, 196-197.) Appellant contends that "the issue resolved in appellant's direct appeal was not the same as the narrower issue raised by his current petition for resentencing." As we explained above, however, this is not an accurate reading of our previous opinion. Appellant further argues, in the alternative, that the law of the case doctrine should not apply because it would "result in an unjust decision given the underlying facts of this case." As both cases he cites for that principle point out, however, "[t]he unjust decision exception" to the law of the case doctrine "does not apply when there is a mere disagreement with the prior appellate determination." (*People v. Stanley* (1995) 10 Cal.4th 764, 787; see also *People v. Shuey* (1975) 13 Cal.3d 835, 842, overruled on another point as recognized by *People v. Bennett* (1998) 17 Cal.4th 373, 389 fn. 4.) Our determination that the evidence was sufficient to support appellant's conviction on an aiding and abetting theory is the law of the case.

Our previous conclusion that substantial evidence supported appellant's conviction for murder under a direct aiding and abetting theory compelled a finding that he was ineligible for relief under section 1170.95 as a matter of law. The trial court accordingly did not err in denying appellant's petition. We need not consider appellant's alternative arguments regarding whether he was a major participant who acted with reckless indifference to human life and the effect of *Banks* and *Clark* on the jury's special circumstance finding.

16

**DISPOSITION**

Affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


WILLHITE, ACTING P.J.


CURREY, J.

17